[Civ. No. 34094. Second Dist., Div. Five. Apr. 23, 1970.]

BILTMORE PRESS, Plaintiff and Appellant, v.
IVAN USADEL et al., Defendants and Respondents.

COUNSEL

Joseph K. Borges, Sr., for Plaintiff and Appellant.

David L. Medoff for Defendants and Respondents.

OPINION

**STEPHENS, Acting P. J.**—The parties to this appeal concede that the memorandum of decision of the trial court fairly outlines the facts of this case. We are of the view that not only are the facts fairly stated in that decision, but the issues presently before us are adequately determined therein. We adopt the statement of facts and pertinent portions of the legal analysis as set forth in the trial court's memorandum of decision, with appropriate deletions and additions of our own comments (shown in brackets), as the opinion of this court:

"Plaintiff's complaint contains three counts: (1) on an 'open' book account, as of January 10, 1965 for $10,986.00; (2) on an account stated, as of the same date and in the same amount, and (3) that on said date defendants became indebted to plaintiff in said amount 'for lithography furnished at their request.' The complaint was filed on March 15, 1967.

"The answer of the three defendants named, in addition to denials, pleaded the bar of the statute of limitations (two years) in subdivision one of section 339 of the Code of Civil Procedure, a deficiency of number and quality of the catalogs printed, a written cancellation of the contract for printing the catalogs, and two counterclaims for damages.

"The president of plaintiff testified that in December 1964, he went to the president of defendant corporation, solicited the printing of the annual

catalog of defendant corporation; that it was agreed that plaintiff would submit sample proofs of its work, and if satisfactory, plaintiff would print 25,000 copies of the catalog for $14,771.00 exclusive of extra work; that exhibit 11, which reads, 'January 8, 1965 . . . 25,000 Trophy Catalogs as per agreement $14,717.00 . . .' and contains seven additional items making a total of $15,986.00, was mailed to defendant corporation.

"The president of the latter corporation testified that the former telephoned, made an appointment, appeared and solicited the printing; he showed the solicitor several annual catalogs of defendant corporation; stated 25,000 copies were needed; the solicitant stated plaintiff could do better work and offered to present some sample proofs; no price was agreed upon; thereafter plaintiff submitted some proposed drafts of a contract; he refused to sign two proposed drafts and plaintiff refused to sign one proposed draft; from time to time, he or his wife, who was the secretary of defendant corporation, approved transparencies and proofs; he received exhibit 11; on January 10, 1965, the president of plaintiff came to his office, said that plaintiff needed some money; he agreed to pay a total of $15,986.00 in three installments and delivered a check for $5,000.00 (exh. 0).

"Plaintiff's president likewise testified as to the meeting on January 10, 1965, the agreement to pay in three installments, and the receipt of the check.

"Plaintiff's statement dated January 29, 1965 (exh. 2) shows installments due thereafter on February 10 and March 10, 1965, and its statement dated March 1, 1965 (exh. 1) shows the February installment had not been paid. Both testified that no payment ha[d] been made after the check delivered on January 10, 1965.'

"The situation, therefore, is one of an oral contract, partially performed by each [party], with the last act by either party on March 11, 1965, and a complaint filed more than two years thereafter, on March 15, 1967."

[On appeal, one contention is that a letter from defendants' attorney dated March 26, 1965 was an "activity" tolling the applicable statute of limitations. This letter was not offered in evidence, and the contents thereof, though set forth in plaintiff's brief (p. 3) were not before the trial court. There was a February 1965 telephonic cancellation of the oral contract between the parties, and, even if we were to consider the March 26 letter, it would not constitute an "activity," for it merely recites that the attorney for defendants made certain legal conclusions, and so advised his clients.]

"It is elementary that a cause of action for the second installment of payment accrued to plaintiff on February 11, 1965 and its cause of

action for the third installment accrued on March 11, 1965, the same day the last delivery was made.

"Plaintiff appears to have sought to avoid the two-year limitation by its first count, on a book account, and its second, on an account stated.

■ "Plaintiff cannot recover under the first count. 'A book account is defined as "a detailed statement, kept in a book, in the nature of debit and credit, arising out of contract or some fiduciary relation." (1 C.J. 597.) A necessary element is that the book shall show against whom and in whose favor the charges are made. (1 C.J. 598.)' (*Wright* v. *Loaiza*, 177 Cal. 605 [171 P. 311]; *Block* v. *D. W. Nicholson Corp.*, 77 Cal.App.2d 739, 746 [176 P.2d 739].) Plaintiff presented no ledger or account book. No account book was read from. (*Shields Co.* v. *Collins Electrical Co.*, 142 Cal.App.2d 382, 386 [298 P.2d 673].) The evidence, therefore, differs from that in the the three cases cited by plaintiff (*Shanklin* v. *Scribner*, 62 Cal.App. 487 [217 P. 130]; *Bailey* v. *Hoffman*, 99 Cal.App. 347 [278 P. 498]; *Messer* v. *Tait's, Inc.*, 121 Cal.App. 689 [9 P.2d 536]), in each of which a book of account was introduced into evidence.

"This case is similar to that of *Tillson* v. *Peters*, 41 Cal.App.2d 671 [107 P.2d 434], wherein the plaintiff sought unsuccessfully, to avoid the bar of the two-year limitation against the recovery of rent installments by pleading an account. Other decisions in which it was held that a plaintiff could not avoid the two-year limitation by pleading an account include: *Stewart* v. *Claudius*, 19 Cal.App.2d 349 [65 P.2d 933]; *Lee* v. *De Forest*, 22 Cal.App.2d 351, 359 [71 P.2d 285]; *Robin* v. *Smith*, 132 Cal.App.2d 288 [282 P.2d 135].

"In the second count plaintiff pleads: 'On or about January 10, 1965, there was an account stated between plaintiff and defendants, upon which the sum of $10,986.00 was agreed upon as the balance due plaintiff.'

■ "An account stated was thus defined in *Coffee* v. *Williams*, 103 Cal. 550, 556 [37 P. 504]: 'An account stated is a document—a writing—which exhibits the state of account between parties and the balance owing one to the other; and when assented to, either expressly or impliedly, it becomes a new contract.' This definition has been quoted and applied in, among others: *Merchants National Bank* v. *Carmichael*, 50 Cal.App. 749, 752 [196 P. 76]; *Garcia* v. *Sainz*, 59 Cal.App. 246, 249 [210 P. 534]; *Wright* v. *Strobeck*, 139 Cal.App. 552, 556 [34 P.2d 781]; *Lacy Manufacturing Co.* v. *Gold Crown Min. Co.*, 52 Cal.App.2d 568, 570 [126 P.2d 644]; *Shapiro* v. *Equitable Life Assur. Soc.*, 76 Cal.App.2d 75, 90 [172 P.2d 725].

"Plaintiff presented no evidence of the existence on January 10, 1965 of

any document, account book or statement, which show $10,986.00 to be owing from any defendant to plaintiff. The date alleged is the one on which the president of plaintiff went to the president of defendant corporation seeking some money payment, and it was mutually agreed that said defendant would pay plaintiff $15,986.00 in three installments, one then, the second a month later, and the third two months thence.

"Whether the agreement on January 10, 1965 be considered as the completion of the oral negotiations initiated in December 1964 or the making of a new contract for installment payments, the situation is one of an oral contract between the two corporations. The mere fact that after the check was delivered both officers may have had it in their minds that thereafter defendant corporation would pay plaintiff $10,986.00 did not create an account stated. It was not until after the check was delivered that plaintiff would have been willing to concede that only $10,986.00 was or would become due. If plaintiff's claim of an account stated were correct, it would follow that in every instance when two parties made an oral contract, an account stated automatically occurred."

■ [Another contention by plaintiff on appeal is that the trial court erred in not admitting into evidence a document dated December 7, 1964, and signed by the defendant. The testimony establishes beyond question that neither side considered this document a written agreement, and it was not signed by the plaintiff. Clearly, the order of exclusion was proper.]

"It is true that subsequent to January 10, 1965 plaintiff, on January 29, 1965 (exh. 2), sent to defendant corporation a statement that $5,493.00 would be due twelve days thereafter, and on March 1, 1965 sent a statement (exh. 1) that said sum was owing, and that a like payment would 'be due March 10 now due [sic] Total due $10,986.00.' (Nothing appears thereon as a basis for the acceleration of the third payment.) The president of defendant corporation testified that a few days after he received exhibit 2 he called the president of plaintiff and stated that the bill would not be paid because of the deficient quality of the catalogs. No deliveries were made thereafter, except that a small delivery of 100 copies was made on March 11, when the third installment was due. Plaintiff's president testified these were ordered, and the president of defendant corporation stated they were not." [The trial court correctly declined to resolve this conflict as it had no bearing upon the effect of the statute of limitations.]

■ [Defendants' evidence supports the conclusion that there was no account stated on or about January 10, 1965, or at any other time.]

■ "The third count, as noted above, alleged that: 'On or about January 10, 1965, defendants became indebted to plaintiff in the sum of

$10,986.00 for lithography furnished at their request and the reasonable value of which is the sum of $10,986.00.' No contention is made that the two-year limitation pleaded by defendants does not bar recovery under this count. The last act on the part of any party was on March 11, 1965, and the complaint was filed on March 15, 1967. No evidence was proffered which would toll the running of the statute."

The judgment is affirmed.

Aiso, J., and Reppy, J., concurred.