468 F.2d 695
 11 UCC Rep.Serv. 518
 In the Matter of North American Leisure Corporation, Debtor.
NORTH AMERICAN LEISURE CORPORATION and Security National
Bank, Appellants,
v.
A & B DUPLICATORS, LTD. and Bell Sound Studios Corp., Appellees.
 Nos. 32, 33, Dockets 71-2094, 71-2159.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 5, 1972.
Decided Oct. 19, 1972.
 
 Michael Berman, New York City, for appellant, North American Leisure Corp.
 Michael Lesch, Shea, Gould, Climenko & Kramer, New York City, for appellant, Security National Bank.
 Conrad B. Duberstein, Otterbourg, Steindler, Houston & Rosen, P. C., New York City, for appellees.
 Before MOORE, FEINBERG and MULLIGAN, Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 This is an appeal by North American Leisure Corporation (NAL), debtor, and the Security National Bank (Bank) from a decision and order of the late Hon. Edward C. McLean, United States District Court Judge, Southern District of New York, dated October 8, 1971, which affirmed findings of facts, conclusions of law and a judgment made by Hon. Herbert Loewenthal, Referee in Bankruptcy, adjudging that A & B Duplicators, Ltd. and its parent corporation, Bell Sound Studios[1] (A&B) have a vendor's lien on certain cartridges, cassettes and tapes. The order is hereby affirmed in part, reversed in part and the proceeding is remanded to the District Court.
 
 
 2
 NAL, the debtor in a Chapter XI of the Bankruptcy Act proceeding, moved before the Referee for an order directing A&B to turn over to the debtor certain cartridges, cassettes and tapes which are alleged to have a value of approximately $550,000. After taking testimony, the Referee denied the motion, holding that A&B had a vendor's lien on the property which he held was in the possession of A&B at the time the petition for an arrangement was filed. The Referee further held that A&B was entitled to sell the goods and credit NAL in accordance with Sections 2-703 and 2-706 of the N.Y. U.C.C. The Referee's determination was sustained by the District Court except that it remanded the case to the Referee for determination of the rights of the Bank in and to any surplus after the sale.
 
 
 3
 Although the relationship between NAL and A&B was based on an oral agreement, there is no basic dispute as to the facts. NAL forwarded its master tape to A&B to be mastered for an 8-track cartridge, cassette or reel tape. A&B supplied its own tape for the mastering process, cut apart the tape into pieces and put the pieces into cartridges or cassettes which it supplied. A&B then put the cartridges into boxes and the boxes into cellophane wrappers. A&B warehoused the units on its premises and shipped them upon receipt of instructions from the debtor. NAL was billed at 80 cents to $1.25 per unit with payment to be made on a 30/60/90 day basis, i. e., one-third at thirty day intervals.
 
 
 4
 The first question before us is whether the relationship between the A&B and the NAL was that of seller and buyer so as to entitle A&B to a vendor's lien under Sections 2-702 and 2-703, N. Y. U.C.C. A&B initially took the position that it had an artisan's lien; that it was not a seller of goods to NAL but rather that it made, altered, repaired or performed work or services upon goods and, therefore, that it had an artisan's lien under Section 180 of the New York Lien Law.[2] A&B abandoned that position ultimately before the Referee whose conclusion of law, that a vendor's lien existed, was affirmed by the District Court.
 
 
 5
 In determining whether or not a contract is one of sale or to provide services, we must look to the "essence" of the agreement. When service predominates, the incidental sale of items of personal property, does not alter the basic transaction. Perlmutter v. Beth David Hospital, 308 N.Y. 100, 104, 123 N.E.2d 792 (1954).[3]
 
 
 6
 Although A&B did supply the tapes, the cassettes and cartridges, it would seem clear that its basic function was to provide the service of reproducing NAL's master tape and reducing it to saleable units to be sold by NAL as its product.[4] While no cases directly in point have been cited or discovered by our own research, the closest analogy is to publishing cases where the publisher provides a manuscript to a printer who agrees to manufacture books and who supplies the paper, the printing and binding material, the plates and the engravings. In such cases, courts have invariably found the agreement to constitute one of work, labor and services rather than a sale of books by printer to publisher.
 
 
 7
 The American cases, as well as the basic English case, Clay v. Yates, 155 Eng.Rep. 1123 (Ex. 1856), are fully discussed in Judge Dawson's opinion in Wm. H. Wise & Co. v. Rand McNally, 195 F.Supp. 621 (S.D.N.Y.1961), where the printer of a manuscript supplied by a publisher had agreed to print 25,000 copies of a book. In a Chapter XI proceeding, the printer claimed an unpaid seller's lien. The court held "[t]he essence of this contract was one of service. Rand [the printer] was not selling books as books but rather was engaged to print and bind, pursuant to a contract. The contract was one of work, labor and materials and not one of sale." 195 F. Supp. at 626 (footnote omitted).
 
 
 8
 While in that case the publisher provided the paper and other materials, the court itself recognized that the single factor of who supplies the majority of materials is not dispositive. Id. at 625 n. 3. Thus in Gross Income Tax Division v. W. B. Conkey Co., 228 Ind. 352, 90 N.E.2d 805 (1950), cert. denied, 340 U.S. 941, 71 S.Ct. 504, 95 L.Ed. 679 (1951), the court found that a contract between a publisher and printer was not a sale, but one for services, even though the printer supplied all of the material used in the making of the book. See also Platt & Munk Co. Inc. v. Republic Graphics Inc., 218 F.Supp. 262 (S.D.N. Y.1962), modified and aff'd, 315 F.2d 847 (2d Cir. 1963). In our view, NAL did not contract to buy cartridges or cassettes (books) from A&B but employed A&B to reproduce its master tape (manuscript) which NAL would sell as its own property to third parties.
 
 
 9
 NAL, the appellant, has persuaded this Court that A&B was not a seller and therefore is not entitled to an unpaid seller's lien. Counsel to A&B, the appellee, on the argument, conceded its inability to distinguish the book printing cases and has cited no contrary authority. In fact, neither the Referee nor the Court below cited any authority for the proposition that the agreement constituted a sale rather than a contract for services. The appellant finds itself in the anomalous position of having persuaded us that this is a contract for services thus presumably entitling A&B to an artisan's lien under Section 180 of the N.Y. Lien Law and to a sale of the collateral under Section 200 of that statute,[5] rather than under Section 2-706 of the Uniform Commercial Code.
 
 
 10
 Appellant's second contention on appeal is that in no event could a vendor's lien arise since A&B had surrendered possession of the goods to NAL. This point must be met since both Section 180 and Section 200 of the Lien Law require that the artisan or lienor have possession of the goods over which his lien is asserted.
 
 
 11
 Although A&B commenced operations at the end of July 1968 and placed the inventory manufactured by it for NAL in its warehouse, in February or early March, 1969 the parties set up a separate fenced enclosure on A&B's premises for storage of the tapes. The Referee found that this was done for the purpose of protecting the material from pilferage and also facilitating distribution to NAL's customers. NAL's employees worked in the enclosure and selected the tapes for shipment by A&B's shipping department to NAL's customers. It was found by the Referee that none of NAL's employees could remove inventory from either the enclosed area or the building without A&B's consent; none had a key to the outer door of the building or to A&B's shipping area which was separately locked, although one had a key to the fenced enclosure itself.
 
 
 12
 "[P]ossession is largely a matter of intent and depends on the circumstances of each individual case . . . ." (R. Brown, The Law of Personal Property Sec. 108, at 412-13 (2d ed. 1955) (footnote omitted)). We agree with the Referee and the District Court that there was no intent by A&B to surrender possession to NAL. The Referee found and it is not disputed that A&B insisted on keeping enough of NAL's goods in its building to protect it against any default in paying its bills. NAL was fully aware of this and acquiesced in the position. In the late fall of 1968, NAL was unable to keep up its 30/60/90 payment obligations and A&B advised that unless it was secured, it would not continue to supply goods. NAL advised A&B that it was secured by the inventory on its premises and that it had a lien on the inventory. Thus satisfied, A&B accepted trade acceptances from NAL, some of which were paid but when the first was in default, NAL again reassured A&B that it would have sufficient inventory upon which it would have a lien for security. In January, 1970, A&B informed NAL that in view of continued default, it would not permit the debtor to take any of the merchandise out of the A&B premises (Referee's Findings 16 to 20). In view of these findings, it cannot be urged that A&B had relinquished its possession or lien on the goods which remained in the enclosure on its premises.
 
 
 13
 Appellant argues that since A&B abandoned the artisan lien theory below, it is estopped to rest on this theory on appeal. We cannot agree. In deciding whether a lower court's decision is correct, an appellate court is not absolutely barred from considering legal theories not relied on below, although it must exercise such power with due regard to orderly procedure and fairness to the parties. See Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed. 2d 314 (1957); Continental Can Co. v. Horton, 250 F.2d 637, 645 (8th Cir. 1957); Cold Metal Process Co. v. McLouth Steel Corp., 126 F.2d 185, 189 (6th Cir. 1942). Neither can we accept the proposition that A&B is equitably estopped from asserting an artisan's lien. The proceedings before the Referee amply demonstrate A&B's continuing concern that it be paid for its services and NAL's repeated assurance that A&B had the security of the inventory in the warehouse. An estoppel, if any, would run in favor of A&B rather than NAL.
 
 
 14
 Although we find that A&B is not precluded from now urging that it has an artisan's lien under Section 180 of the N.Y. Lien Law and that this Court has the power to affirm on this theory, we decline so to do. This matter was litigated before the Referee and the District Court on the theory of an unpaid seller's lien and not an artisan's lien. Appellee admitted that this latter theory was abandoned because of a fear that an artisan's lien is inconsistent with the extension of credit. See Wiles Laundering Co. v. Hahlo, 105 N.Y. 234, 11 N.E. 500 (1887), and In re Tele King Corp., 137 F.Supp. 633, 634-35 (S.D.N.Y.1955). While appellee now contends that this abandonment might well have been erroneous, it seems obvious that the appellant has not had the opportunity to research and brief the matter in its new posture. Since extension of credit now becomes crucial, it may well be that the parties may wish to present additional testimony or proffer further evidence of the credit arrangement between the parties from the beginning of their relationship. The District Court, in any event, had remanded to the Referee the question of the Bank's security interest to the surplus, if any, on sale. In view of our present position, it would appear that the rights of A&B, as well as the Bank, should now be determined.
 
 
 15
 Hence, we reverse the affirmance of the Referee's conclusion of law that A&B had a vendor's lien on the goods in question and we affirm the determination that A&B had possession of these goods. We remand to the District Court the question as to whether or not A&B had an artisan's lien. This determination as well as the question as to the interest of the Bank may be further remanded to the Referee in the event that the court below determines that there are further issues of fact which have to be determined in light of the legal positions taken by the parties on this question.
 
 
 16
 Affirmed in part, reversed in part and remanded.
 
 
 
 [1]
 Throughout these proceedings both parent and subsidiary, although apparently separate entities, have been considered as one and for the purposes of this appeal there is no point in distinguishing one from the other
 
 
 [2]
 N.Y. Lien Law Sec. 180 (McKinney's Consol.Laws. c. 33 Supp.1972) provides:
 A person who makes, alters, repairs or performs work or services of any nature and description upon, or in any way enhances the value of an article of personal property, at the request or with the consent of the owner, has a lien on such article, while lawfully in possession thereof, for his reasonable charges for the work done and materials furnished, and may retain possession thereof until such charges are paid.
 
 
 [3]
 Although the sales-service dichotomy analyzed in Perlmutter and the cases cited therein were decided under the Sales Act, it has not been suggested that the Uniform Commercial Code affects the result. See New York Annotations to N.Y. U.C.C. Sec. 2-314 (McKinney 1964). But cf. Comment, Sale of Goods in Service-Predominated Transactions, 37 Fordham L.Rev. 115, 117 (1968). These comments relate primarily to the question of whether or not a warranty accompanies the incidental sale of some goods in a service contract, which is not at issue here
 
 
 [4]
 NAL's own petition on May 15, 1970 for a turnover before the Referee characterizes the agreement with A&B as one "under the terms of which A&B and Bell agreed to manufacture tapes and cassettes for petitioner."
 
 
 [5]
 N.Y. Lien Law Sec. 200 (McKinney Supp. 1972) provides:
 A lien against personal property, other than the lien of a warehouseman pursuant to section 7-209 of the uniform commercial code, the lien of a carrier pursuant to section 7-307 of the uniform commercial code, a security interest in goods and the lien of a keeper of a hotel, apartment hotel, inn, boarding-house or lodging-house, except an immigrant lodging-house, if in the legal possession of the lienor, may be satisfied by the sale of such property according to the provisions of this article.