[No. B033608. Second Dist., Div. Three. Mar. 23, 1989.]

FILMSERVICE LABORATORIES, INC., Plaintiff and Appellant, v. HARVEY BERNHARD ENTERPRISES, INC., Defendant and Respondent.

## COUNSEL

Peter C. Ver Halen for Plaintiffs and Appellant.

Rosenfeld, Meyer & Susman, Robert H. Thau, Matthew H. Saver and David M. Ellis for Defendant and Respondent.

## OPINION

**DANIELSON, Acting P. J.—** ■ ■ ■ ■ Filmservice Laboratories, Inc. (Filmservice) appeals[1] from a judgment (order of dismissal) following the sustaining of the demurrer of defendant Harvey Bernhard Enterprises, Inc. (Bernhard) to its third amended complaint, without leave to amend.

---

[1] We deem the appeal to have been taken from the order of dismissal entered March 1, 1988, albeit the notice of appeal recites the appeal is taken from the November 2, 1987, order sustaining a demurrer to the third amended complaint without leave to amend. No appeal lies from an order sustaining a demurrer without leave to amend. Instead, the appeal must be taken from the resulting order of dismissal. (*Bledsoe* v. *Informative Research* (1967) 247 Cal.App.2d 684 [56 Cal.Rptr. 9].)

The central question in this appeal is whether the oral contract between the parties was to provide services and thus subject to a two-year statute of limitations, or for the sale of goods and subject to a four-year statute of limitations. We hold that the contract was to provide services, subject to the two-year statute, and we affirm the judgment.

## FACTUAL AND PROCEDURAL STATEMENT

On September 29, 1986, Filmservice filed a complaint against Producers Distribution Company (Producers) and Bernhard for damages in the sum of $39,115.84, plus interest from June 27, 1983, at the legal rate. The first cause of action was pleaded on an open book account for money due within the last four years. The second cause of action pleaded an oral contract between Filmservice and Producers.

The complaint alleged: Pursuant to an oral contract Filmservice agreed to manufacture release prints of the motion picture entitled "THE MACK" (THE MACK) at the rate of $0.1450 per foot and to deliver those prints to Producers for exhibition. Producers breached the oral agreement by failing to pay Filmservice the sum of $39,115.84.

On information and belief it was alleged Producers acted with the knowledge and consent of Bernhard, its undisclosed principal, for whose benefit the prints were made, and as the agent of Bernhard.[2]

On January 26, 1987, Bernhard's demurrer to the complaint was sustained with leave to amend.

On February 20, 1987, a first amended complaint was filed setting forth three causes of action, respectively, for book account, account stated, and foreclosure of equitable lien. The cause of action for breach of an oral contract which had been pleaded in the original complaint was omitted without explanation.

In the first cause of action it was alleged that on June 27, 1983, Producers and Bernhard became indebted to Filmservice in the sum of $39,115.84 for a balance due on a book account for goods sold and delivered by Filmservice to defendants at their specific request.

The second cause of action alleged that an account was stated based on the agreement of Producers and Bernhard that they were indebted to Filmservice in the above sum.

---

[2] The record implies that Producers later became insolvent. Producers did not participate in the trial court proceedings and is not a party to this appeal.

The third cause of action alleged: In or about March 1983, Producers, in its capacity as agent for Bernhard, which owned THE MACK, delivered to Filmservice certain preprint elements of THE MACK. In March 1983, Filmservice sold and delivered to Producers positive release prints of THE MACK for exhibition by defendants throughout the world. Under the custom and practice of the industry Filmservice is entitled to impress an equitable lien on the above preprint elements.

On May 4, 1987, Bernhard's demurrer to the first amended complaint was sustained with leave to amend. The court reasoned: "All causes of action appear to be barred by statute of limitations. Complaint relied on oral contract barred by statute of limitations. First amended complaint now tries to plead around the statute of limitations bar, but in es[s]ence the underlying obligation rests on an oral contract which is barred. Court judicially notices inconsistencies in the two pleadings [i.e., complaint and first amended complaint]."

On May 28, 1987, a second amended complaint was filed setting forth three causes of action, respectively, for book account, account stated, and foreclosure of equitable lien.

The following allegations were added to those recited above from the first amended complaint: Filmservice is a film processing laboratory specializing in the manufacture of copies of motion picture films at the request of its customers for exhibition on television and in theaters throughout the world.

In or about March 1983, Producers requested a bid for the right to manufacture prints of THE MACK. Filmservice "offered and agreed to manufacture and deliver release prints of [THE MACK] from negatives to be provided by [Producers] for . . . the sum of $0.1450 per foot." Between March 21, 1983, and June 27, 1983, Producers and Bernhard requested and Filmservice manufactured 28 release prints of THE MACK and 40 prints of the promotional trailer. Exhibits "A" and "B" are copies of the invoices therefor, which were issued by Filmservice on June 7, 1983, and June 27, 1983. Exhibit "C" is a copy of an acknowledgment in writing by Producers and Bernhard of their indebtedness on the account.

On July 24, 1987, Bernhard's demurrer to the second amended complaint was sustained with leave to amend.

On August 24, 1987, a third amended complaint was filed setting forth five causes of action based on the theories of open book account, account

stated, foreclosure of equitable lien, setting aside of fraudulent conveyance, and conspiracy.

The gist of the additional causes of action in the third amended complaint is the theory that Bernhard and Producers conspired to defraud Filmservice regarding the latter's right to payment for the prints it manufactured. The fraud was allegedly accomplished by Producers first transferring possession of those prints to Bernhard without consideration and then by Bernhard's transfer of those prints to Blossom Pictures. Filmservice allegedly did not know of Bernhard's claimed ownership interest in the right to distribute THE MACK until February 1986 and did not know of the terms of the agreements between Producers and Bernhard or the agreement between Bernhard and Blossom Pictures until July 1987.

The third amended complaint was also based on the following allegations, in addition to those recited above from the first and second amended complaints:

Exhibits "A" and "B"[3] of the third amended complaint are relevant portions of a written contract entered into on or about February 17, 1983, between Producers and Bernhard. Under its terms Bernhard granted Producers the right to distribute THE MACK throughout the world and authorized Producers to incur expenses with respect thereto. Producers was given a security interest in THE MACK and income generated therefrom, inter alia, with respect to Producer's distribution costs and expenses.

Exhibit "E" allegedly embodies written acknowledgment by Producers and Bernhard on April 27, 1984, of the outstanding indebtedness due Filmservice and its assertion of a security lien therefor. Exhibit "E" is a copy of an agreement entered into on or about April 27, 1984, between Producers and Bernhard for the purpose of rescinding the February 17, 1983, distribution agreement. Pursuant to the April agreement the subject prints were transferred to Bernhard from Producers in return for the sum of $34,944.05. It was further alleged that Producers and Bernhard acknowledged in that agreement the existence of both its indebtedness to Filmservice and the latter's security interest.

Exhibit "F" is a copy of the agreement whereby Bernhard transferred to Blossom Pictures the possession of the prints out of which Filmservice's claim arose.

---

[3] Exhibits "A" and "B" of the second amended complaint were attached as Exhibits "C" and "D" of the third amended complaint.

On November 2, 1987, the court sustained Bernhard's demurrer to the third amended complaint without leave to amend on the ground it was barred by the statute of limitations.

The action was dismissed on March 1, 1988.

### CONTENTIONS

Filmservice proceeds against Bernhard as the undisclosed principal of Producers. The thrust of its position is that the two-year statute of limitations applicable to oral contracts (Code Civ. Proc., § 339) does not bar the action for the following reasons: (1) The action is timely under the four-year statute of limitations of Commercial Code section 2725, which applies to oral contracts for the sale of goods; (2) Prior inconsistent allegations in the original complaint, regarding an oral contract are not fatal to the first and second causes of action since sufficient facts were alleged to establish that the oral contract was superseded by an open book account and an account stated, which are governed by a four-year statute of limitations (Code Civ. Proc., § 337); (3) Because the first and second causes of action are timely the third cause of action to foreclose a lien is likewise timely; and (4) The fourth cause of action is not barred since a four-year statute of limitations is applicable to fraudulent conveyances (Civ. Code, §§ 3439.04, 3439.09, subd. (a)).

### DISCUSSION

I. *The Manufacture of Motion Picture Release Prints From Negatives as a Service or Sale of Goods*

■ Filmservice contends that this case is governed by the four-year statute of limitations applicable to oral contracts for the sale of goods, instead of the two-year statute of limitations applicable to oral contracts other than for the sale of goods.

The statute of limitations applicable to oral contracts for sale of goods is four years. ■ Subdivision (1) of California Uniform Commercial Code section 2725 provides in pertinent part: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." The term "any contract for sale" includes an oral agreement. (*Hatchen* v. *Stewart* (1974) 42 Cal.App.3d Supp. 1, 3 [116 Cal.Rptr. 631].)

■ We do not agree that the four-year statute of limitations is applicable here. The fallacy of plaintiff's position is its premise that the prints of

THE MACK manufactured by Filmservice constitute "goods" within the meaning of the California Uniform Commercial Code. As authority for its premise Filmservice relies primarily on the definition of "goods" in that code and relies by way of analogy on the provisions in the Revenue and Taxation Code defining "sale" and "tangible personal property." We find its reliance on those authorities to be misplaced.

" 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Division 8) and things in action." (Cal. U. Com. Code, § 2105, subd. (1).)

However, "[i]n determining whether or not a contract is one of sale or to provide services, we must look to the 'essence' of the agreement. When service predominates, the incidental sale of items of personal property[ ] does not alter the basic transaction." (*North American Leisure Corp.* v. *A & B Duplicators, Ltd.* (2d Cir. 1972) 468 F.2d 695, 697.)

From our review of the record we conclude the essence of the contract between Filmservice and Producers was to provide services and not a sale of goods. ▮ In the original complaint Filmservice alleged that what it provided Producers was "work, labor, services and materials." ▮ A contract for the furnishing of labor and materials is not a contract for the sale of goods. (See, e.g, *Aced* v. *Hobbs-Sesack Plumbing Co.* (1961) 55 Cal.2d 573, 580, 582 [12 Cal.Rptr. 257, 360 P.2d 897].) ▮ Filmservice has not alleged any facts in subsequent complaints to explain why it should not be bound by such allegation, which is contrary to its current posture that it effected a sale of goods, not services, to Producers. It is well settled that " '[f]acts once alleged cannot be withdrawn from consideration by merely filing an amended pleading omitting them without explanation. . . . [Citation.]' " (*Fisher* v. *McInness* (1961) 191 Cal.App.2d 577, 580 [12 Cal.Rptr. 798]; see also, *Reichert* v. *General Ins. Co.* (1968) 68 Cal.2d 822, 836-837[69 Cal.Rptr. 321, 442 P.2d 377]; *Hills Trans. Co.* v. *Southwest Forest Industries, Inc.* (1968) 266 Cal.App.2d 702, 710-711 [72 Cal.Rptr. 441].)

Moreover, we find this case to be analogous to the situation in *North American Leisure.* In that case North American Leisure (NAL) "forwarded its master tape to A&B to be mastered for an 8-track cartridge, cassette or reel tape. A&B supplied its own tape for the mastering process, cut apart the tape into pieces and put the pieces into cartridges or cassettes which it supplied. A&B then put the cartridges into boxes and the boxes into cellophane wrappers. A&B warehoused the units on its premises and shipped

them upon receipt of instructions from [NAL]. NAL was billed at 80 cents to $1.25 per unit . . . ." (*North American Leisure Corp.* v. *A & B Duplicators, Ltd., supra,* 468 F.2d 695, at p. 696.)

The court in *North American Leisure* noted there were no cases directly on point; however, the court went on to observe the case at hand was analogous "to publishing cases where the publisher provides a manuscript to a printer who agrees to manufacture books and who supplies the paper, the printing and binding material, the plates and the engravings. In such cases, courts have invariably found the agreement to constitute one of work, labor and services rather than a sale of books by printer to publisher." (468 F.2d at p. 697.) After scrutinizing some of those cases, the court concluded: "NAL did not contract to buy cartridges or cassettes (books) from A&B but employed A&B to reproduce its master tape (manuscript) which NAL would sell as its own property to third parties." (*Ibid.*; cf *RRX Industries, Inc.* v. *Lab-Con., Inc.* (9th Cir 1985) 772 F.2d 543, 546-547.)

■ Similarly, Producers did not contract for the purchase of the prints of THE MACK manufactured by Filmservice. Instead, Producers utilized the services of Filmservice to produce prints from its negatives which prints Producers would distribute, as its own, to third parties.

The "essence" of the contract was to provide a service which resulted, incidentally, in the transfer of some tangible personal property; it was not for the sale of the goods.

We therefore hold that the manufacture from negatives of release prints of a motion picture constitutes a service to the owner of the negatives and the manufacture and delivery of the resulting prints to the owner of the negatives does not constitute a sale of "goods" within the meaning of section 2105 of the California Uniform Commercial Code.

■ The remaining contention of Filmservice, that the contract is for the sale of goods under the Uniform Commercial Code, is based on the definitions of "tangible personal property" and "sale" under the Revenue and Taxation Code. (Rev. & Tax. Code, §§ 6006, 6016.) We find that the reliance by Filmservice on those definitions to be misplaced, because this case is governed by the Uniform Commercial Code. (Cf. *A&M Records, Inc.* v. *State Bd. of Equalization* (1988) 204 Cal.App.3d 358, 373-376 [250 Cal.Rptr. 915].)

II. *Oral Contract As Opposed to Open Book Account or Account Stated*

Filmservice argues that the first and second causes of action are timely since they properly plead, respectively, a cause of action for open book account and account stated, which are subject to a four-year statute of limitations (Code Civ. Proc., § 337) as opposed to a two-year statute of limitations applicable to oral contracts (Code Civ. Proc., § 339). Filmservice urges us to disregard the prior pleading of an oral contract on the ground that such contract was superseded by the pleading of an open book account and an account stated.

We reject Filmservice's assertion that these causes of action are not barred by the two-year statute of limitations applicable to oral contracts. We again find Filmservice's underlying premise to be fatally flawed. The facts alleged in the third amended complaint do not give rise to a reasonable inference that the oral contract between Filmservice and Producers was superseded by an open book account or account stated.

The record clearly establishes what Filmservice is attempting to do is transmute an untimely action for breach of an oral contract into a timely action based on the above common counts. Its effort must fail. In the original complaint Filmservice alleged a cause of action based on an oral contract. The statute of limitations began to run on that cause of action on June 27, 1983, the date when Producers allegedly breached the oral contract by failing to pay Filmservice the sum of $39,115.84.

Both common counts in the first and second causes of action are based on the same basic facts as the oral contract cause of action, i.e., the failure of Producers to pay the sum of $39,115.84 which became due on June 27, 1983. In fact, Filmservice conceded in the third amended complaint that the action was based on a contract, i.e., Producers and Bernhard "contracted to perform the obligation upon which this action is brought . . . ."

Contrary to Filmservice's claim otherwise, no facts have been alleged which give rise to any reasonable inference that the oral contract was superseded by an open book account or account stated agreement. The mere existence of two invoices addressed to Producers and prepared by Filmservice, copies of which are Exhibits "C" and "D" to the third amended complaint, do not evidence such accounts. Those invoices simply memorialize the oral contract. (See, e.g., *Biltmore Press* v. *Usadel* (1970) 6 Cal.App.3d 896, 900-901 [86 Cal.Rptr. 233]; *Warda* v. *Schmidt* (1956) 146 Cal.App.2d 234, 237 [303 P.2d 762]; *H. Russell Taylor's Fire*

*Prevention Service, Inc.* v. *Coca Cola Bottling Corp.* (1979) 99 Cal.App.3d 711, 727 [160 Cal.Rptr. 411].) There is in fact no allegation that Producers/Bernhard and Filmservice agreed to forego the oral contract and proceed on the basis of an existing account. (Cf. *Gardner* v. *Rutherford* (1943) 57 Cal.App.2d 874, 884-886 [136 P.2d 48]; *Warda* v. *Schmidt, supra,* 146 Cal.App.2d 234, 236-238.)

Moreover, no factual basis was properly alleged to support the conclusion that Bernhard acknowledged its indebtedness to Filmservice in the amount of $39,115.84 or any other amount. (Cf. *Gleason* v. *Kramer* (1980) 103 Cal.App.3d 782, 785-787 [163 Cal.Rptr. 483], in which no oral contract was alleged, but defendant acknowledged in writing that account existed.)

Exhibit "E," which is purportedly the foundation of the conclusion that Bernhard acknowledged its indebtedness to Filmservice, does not recite what Filmservice attributes to it. A careful examination of Exhibit "E" reveals only that as of April 27, 1984, Producers represented to Bernhard that it had not encumbered any rights under its distribution agreement with Bernhard except there was "presently a lien for approximately Thirty Five Thousand Dollars ($35,000) on picture materials by Filmservice[ ] Laboratories." This statement is far from an acknowledgment by Bernhard that it owed Filmservice a sum certain, i.e., $39,115.84. (See, e.g., *H. Russell Taylor's Fire Prevention Service Inc.* v. *Coca Cola Bottling Corp., supra,* 99 Cal.App.3d 711, 727.)

It is not disputed that the facts originally alleged establish an oral contract, which is barred by a two-year statute of limitations (Code Civ. Proc., § 339). We hold that the action cannot be resurrected by the device of pleading common counts, such as open book account and account stated, in lieu of the oral contract where, as here, the common counts and the cause of action based on an oral contract are factually identical in all material respects and no facts are alleged explaining the omission of the oral contract allegations in the amended complaints. (See, e.g., *Tillson* v. *Peters* (1940) 41 Cal.App.2d 671, 676; *Fisher* v. *MacInness, supra,* 191 Cal.App.2d 577, 580; *Reichert* v. *General Ins. Co., supra,* 68 Cal.2d 822, 836-837; *Hills Trans. Co.* v. *Southwest Forest Industries, Inc., supra,* 266 Cal.App.2d 702, 709-711.)

III. *Extinguishment of Equitable Lien*

 Since we find the principal obligation, i.e., recovery of the sum of $39,115.84 for breach of oral contract, to be barred by the statute of limitations (Code Civ. Proc., § 339), we must also find Filmservice's third cause of action for foreclosure of an equitable lien, to be barred. "A lien is

extinguished by the lapse of time within which, under the provisions of the Code of Civil Procedure . . . [a]n action can be brought upon the principal obligation . . . ." (Civ. Code, § 2911, subd. 1; see also, *Beal* v. *United Properties Co.* (1920) 46 Cal.App. 287, 298 [189 P. 346].)

## IV. *Limitation of Actions as a Bar to Cause of Action for Fraudulent Conveyance*

The fourth cause of action, for fraudulent conveyance, is based on new facts. In essence it is alleged that Producers, as Bernhard's agent, received possession of the subject prints from Filmservice in June 1983. In April 1984, Bernhard rescinded Producers' right to possession, and Producers transferred the prints to Bernhard.

Since this cause of action is based on new facts, there is no relation-back to the date the original complaint was filed. (*Barrington* v. *A.H. Robins Co.* (1985) 39 Cal.3d 146, 154 [216 Cal.Rptr. 405, 702 P.2d 563].) Instead, the limitation of actions period began to run as of April 1984, the time when Producers allegedly transferred possession of the subject prints to Bernhard. The third amended complaint, pleading the fraudulent conveyance cause of action for the first time, was not filed until August 24, 1987, more than three years later.

The four-year statute of limitations presently applicable to fraudulent transfers (Civ. Code, § 3439.09, subd. (a)) does not control in this case since it applies only to transfers made after 1986. (Civ. Code, § 3439.12.) Instead, a fraudulent transfer made before that year, which is the case here, is subject to a three-year limitation. (*Gould* v. *Fuller* (1967) 249 Cal.App.2d 18, 32 [57 Cal.Rptr. 23].) In its reply brief Filmservice acknowledges a three-year limitation period applies to this cause of action. We therefore find the fraudulent conveyance cause of action also to be time barred.

## V. *Conspiracy*

It is established that no cause of action exists for conspiracy, per se. Whether or not a cause of action for conspiracy is timely must be determined by reference to the statute of limitations applicable to the underlying cause of action. (*Kenworthy* v. *Brown* (1967) 248 Cal.App.2d 298, 301 [56 Cal.Rptr. 461]; *117 Sales Corp.* v. *Olsen* (1978) 80 Cal.App.3d 645, 649 [145 Cal.Rptr. 778].) In this case the underlying cause of action is for fraudulent conveyance, which we have found to be time barred.

That being the case we find the fifth cause of action for conspiracy is also time barred.

## Decision

The judgment (order of dismissal) is affirmed.

Arabian, J., and Croskey, J., concurred.