Filed 2/20/14  King v. Batim Property Management CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALLEN R. KING, | B246950 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC 465552) |
| v. | |
| BATIM PROPERTY MANAGEMENT, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court for the County of Los Angeles. Rita Miller, Judge.  Affirmed.

Fischer, Zisblatt & Kiss and Benjamin Kiss for Defendant and Appellant.

Allen R. King, in pro. per., for Plaintiff and Respondent.

_____

**SUMMARY**

After a bench trial, the court ordered judgment for plaintiff, finding the parties established a book account relationship; defendant was an agent for unidentified principals when the book account was started and was therefore liable for unpaid amounts; and the action was timely under the four-year statute of limitations applicable to a book account. We affirm the judgment.

**FACTS**

To the extent the facts are uncontested, we take them from the trial court's statement of decision.

Plaintiff Allen R. King is an attorney specializing in landlord-tenant litigation. Defendant Batim Property Management, Inc., manages rental properties for many property owners, providing virtually all the services needed to run the properties, including the review and payment of legal bills. Defendant does not advance costs for the landlords, instead maintaining checking accounts for each property, with both the property owner and defendant as signatories. The property owner would deposit money and defendant would issue and sign checks for expenses. "The checks were imprinted with the property address and [defendant's] office address, not the property owners' own address."

Mark Silber, who worked for defendant, had heard about plaintiff, and in September 2005 the two men met at Mr. Silber's office. The meeting resulted in an understanding that, if defendant referred eviction cases for defendant's landlord-clients to plaintiff, plaintiff would handle the cases at specified rates. Plaintiff would also advance court costs and perform work without any advance deposit of funds. "The parties understood that, if [defendant] referred a case, [plaintiff] would send his bills to [defendant], not the individual property owners, and that the bills would be paid by [defendant]." According to Mr. Silber, he said at the meeting that he would refer some cases to plaintiff and give him "a trial run."

Shortly after that meeting, on September 27, 2005, defendant referred an unlawful detainer action to plaintiff involving a property at 1088 W. 39th Street. Plaintiff

2

advanced court costs and performed legal services without an advance of funds, and then sent an invoice for $588.30 to defendant. Defendant issued and sent a check to plaintiff for the invoiced amount. This was the first of more than 600 cases for over 95 different landlords handled in this fashion over the next five years.

During their business relationship, plaintiff sent defendant 43 invoices totaling $34,580 that defendant did not pay. The first unpaid invoice was dated November 9, 2007, and the last was dated March 3, 2010. Defendant did not pay these bills, all of which related to three properties, because there was no money in the property owners' accounts to pay plaintiff. Plaintiff did not realize the invoices were unpaid, for a long time.

Plaintiff sued defendant on July 18, 2011, to recover the unpaid attorney fees and costs. Plaintiff asserted causes of action for breach of oral contract and for common counts. The complaint is not in the record, but the trial court's decision says that, as to the common counts, plaintiff alleged "he entered into a book account relationship with the defendant, that the defendant was an agent of certain principals, that plaintiff was not paid for some of the work he did at defendant's request, and that defendant is liable for the unpaid sums because defendant was an agent for . . . unidentified principals at the time the book account commenced." Plaintiff also alleged "the common count of 'work, labor, services rendered at the special instance and request of defendant, for which defendant promised to pay.' "

After a bench trial, the court found plaintiff was entitled to judgment under both common count theories. (The plaintiff did not rely on the oral contract count at trial, and the court agreed with defendant that the two-year statute of limitations barred recovery on that theory.) The court's proposed statement of decision, later adopted, explained that no contract was formed at the September 2005 meeting. "In effect, [plaintiff] offered to enter into a book account relationship with [defendant]" on the terms discussed at the meeting "if [defendant] referred him cases. Neither party was bound and neither would receive consideration unless or until cases were referred." Mr. Silber "was an actual and apparent agent for [defendant] and its landlord clients. [Defendant] did not disclose the

3

names of its principals at the September 2005 meeting. [Plaintiff] did not know the names of the landlord clients and thus was not in a position to run credit checks or otherwise determine if it would be prudent to advance costs for them."

The court found the book account relationship began when defendant accepted plaintiff's offer by referring an unlawful detainer case to plaintiff on September 27, 2005. At that time, "none of the names of the properties or landlords other than 1088 W. 39th Street were disclosed." On that date, plaintiff began to keep "detailed records of each expenditure of costs and charges for fees on his computer hard drive and . . . credits for payments, segregated by property address, were also maintained on the hard drive. He was capable of printing out, and did print out from time to time, a 'statement' containing a running total of debits and credits to the [defendant's] book account." Because the identities of the property owners for whom invoices were unpaid were undisclosed at the time the book account relationship began, defendant was liable for the unpaid bills whether or not it agreed to be liable. (Thus the court found it "unnecessary to decide the issue of who said what to whom at the September 2005 meeting about who would be liable for payment of the fees and cost[s].") The same findings supported recovery on the common count for "services rendered at the special instance and request of defendant, for which defendant promised to pay" as a "valid alternative basis for recovery."

Defendant objected to the proposed statement of decision on the ground it did not adequately describe testimony from plaintiff showing he "lied under oath" and his exhibits were "unreliable." The court overruled defendant's objections, and entered judgment for $34,580, plus court costs and prejudgment interest. This appeal followed.

## DISCUSSION

Defendant argues that no book account was created between plaintiff and defendant; defendant was not an agent for unidentified principals when the purported book account was created; and the cause of action for common counts was barred by the statute of limitations. We find no merit in these contentions.

4

## 1. The Book Account Issue

The Code of Civil Procedure defines a book account. The term "means a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner." (Code Civ. Proc., § 337a.)

Defendant first contends the court did not identify "when . . . a contract was entered into between the parties, that would serve as the basis for the open book account." On the contrary, the court expressly stated that a contract was required "as a predicate to a book account," that no contract was formed at the initial meeting, but that the book account relationship "started when [defendant] accepted [plaintiff's] offer by performance." The performance "consisted of [defendant] referring an unlawful detainer case to [plaintiff] around September 27, 2005," and plaintiff "treated the referral as an acceptance by [defendant] of his offer . . . ." Thus the trial court plainly found the book account arose "out of a contract . . . ." (Code Civ. Proc., § 337a.)

Defendant's second argument is that there is no substantial evidence a book account existed between the parties. In essence, defendant contends that it proved plaintiff "altered the Invoices" he produced to the court, so the entries in the books "were not original or the first permanent entries of the transactions." This argument stems from plaintiff's erroneous testimony that the initial September meeting occurred at defendant's Larchmont office, his production of invoice copies from his computer bearing that address, and his testimony that his computer program would not automatically alter the address on previously-issued invoices after a change of address. Defendant then produced documentation showing the invoices in question were in fact sent to addresses on Wilshire Boulevard and Beverly Boulevard, where defendant had offices before

5

moving to the Larchmont address in January 2007.  But the trial court was not persuaded that plaintiff's error on the location of defendant's office in 2005 made his testimony on other points unreliable,  and credibility issues are for the trial court to weigh, not this court.  Moreover, defendant cites no authority suggesting that an address update function in a computer program would make records maintained on a computer hard drive not "reasonably permanent" within the meaning of Code of Civil Procedure section 337a. (See Civ. Code, § 1633.7, subd. (c) ["If a law requires a record to be in writing, an electronic record satisfies the law."].)

Next defendant asserts that plaintiff did not keep a "running balance" or "running total of debits and credits," but instead applied payments to each individual invoice, and did not send defendant "a bill with an outstanding balance."  Further, defendant contends plaintiff prepared an exhibit (not in the record, but described by the trial court as "the book account printout") "well after the fact for use at his deposition."  Again, the trial court found otherwise, expressly stating that plaintiff's testimony – that he made the records when the fees and costs were incurred and kept them in the regular course of his business – was credible.  "The court is not persuaded by defendant's argument that [plaintiff] made up Exhibit 4, the book account printout, only at the time of his deposition in this case, and not concurrent with the transactions."  And, the court found no requirement in Code of Civil Procedure section 337a for a "running calculation of the net of the total debits and credits."  Nor do we.

## 2.     The Unidentified Principal Issue

"A principal is unidentified if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal but does not have notice of the principal's identity."  (Rest. 3d Agency, § 1.04(2)(c); see *id.*, § 6.02 ["When an agent acting with actual or apparent authority makes a contract on behalf of an unidentified principal,  [¶]  (1) the principal and the third party are parties to the contract; and  [¶] (2) the agent is a party to the contract unless the agent and the third party agree otherwise."]; cf. *Stephan v. Maloof* (1969) 274 Cal.App.2d 843, 850 ["it is of course settled that while a contract made by an agent for an undisclosed principal is . . . the

6

contract of the principal, it also may be considered the contract of the agent upon which he may be sued individually"].)

Defendant asserts there is no substantial evidence it was the agent of unidentified principals. Defendant points out plaintiff knew the identity of the property owner for the initial eviction case at the time the book account began, when defendant made the first referral "by faxing over a three-day notice" containing the name of the property owner. Similarly, "the principal was disclosed at the inception of each matter referred by [defendant]."

But plaintiff plainly did not know the identities of the scores of property owners in any of the subsequent cases, including the owners on the unpaid invoices at issue, when the book account began. The trial court found: "[Defendant] did not disclose the names of its principals at the September 2005 meeting. [Plaintiff] did not know the names of the landlord clients and thus was not in a position to run credit checks or otherwise determine if it would be prudent to advance costs for them." (See Rest. 3d Agency, § 6.02, com. b, p. 30 ["When a third party has notice that an agent deals on behalf of a principal but does not have notice of the principal's identity, it is not likely that the third party will rely solely on the principal's solvency or ability to perform obligations arising from the contract. Without notice of a principal's identity, a third party will be unable to assess the principal's reputation, assets, and other indicia of creditworthiness and ability to perform duties under the contract. If an agent provides reassurances about the principal's soundness only generally or describes the principal, the third party will be unable to verify such claims without notice of the principal's identity."].) The trial court did not err.

### 3. The Statute of Limitations Issue

The statute of limitations for an action on a book account is four years. (Code Civ. Proc., § 337, subd. 2.) Defendant contends the two-year statute of limitations for an oral contract applies (§ 339), asserting that under *Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.* (1989) 208 Cal.App.3d 1297 (*Filmservice Laboratories*), a plaintiff cannot extend the statute of limitations by "pleading an open book account in

7

lieu of the oral contract" when the two causes of action are "factually identical in all material aspects." As the trial court found, *Filmservice Laboratories* does not apply.

In *Filmservice Laboratories*, the lawsuit was dismissed on demurrer. The plaintiff first pleaded an open book account and an oral contract, and then amended the complaint to eliminate the oral contract claim. It was undisputed that the facts originally alleged established an oral contract; there was no allegation that the parties "agreed to forego the oral contract and proceed on the basis of an existing account"; and no facts were alleged "explaining the omission of the oral contract allegations in the amended complaint." (*Filmservice Laboratories, supra,* 208 Cal.App.3d at pp. 1300, 1307-1308.)

This is not such a case. The trial court found the initial September 2005 meeting "resulted . . . in an offer to enter a book account relationship that could be accepted later by performance," and the case "proceeded to trial on a book account, not a contract . . . ." As the trial court observed, if every book account were treated as a contract identical to the book account, "the four-year period of limitations applicable to book accounts would always be rendered inapplicable by the two-year period of limitations for oral contracts" and would be illusory. (See also *Warda v. Schmidt* (1956) 146 Cal.App.2d 234, 237 ["the parties to a written or oral contract may, by agreement or conduct, provide that monies due under such contract shall be the subject of an account between them," and in that event "a cause of action arising therefrom is on the account and not on the underlying contract"].) As we have seen, substantial evidence supports the trial court's findings that a book account was established, so the four-year statute of limitations applies.

## DISPOSITION

The judgment is affirmed. Plaintiff shall recover his costs on appeal.


GRIMES, J.


We concur:

BIGELOW, P. J.                    RUBIN, J.

8