Filed 5/25/23  Western Riverside Council of Governments v. McKiernan CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS, | B322576 |
| Plaintiff and Appellant, | (Riverside County Super. Ct. No. RIC1707201) |
| v. | |
| KIERNAN MCKIERNAN et al., | |
| Defendants and Respondents. | |
| CITY OF BEAUMONT, | |
| Cross-Complainant and Appellant, | (Riverside County Super. Ct. No. RIC1712042) |
| v. | |
| KIERNAN MCKIERNAN et al., | |
| Cross-Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Riverside County, John W. Vineyard, Judge. Reversed and remanded with directions.

Best Best & Krieger, Jeffrey V. Dunn and Christopher Pisano for Plaintiff and Appellant Western Riverside Council of Governments.

Slovak Baron Empey Murphy & Pinkney, Shaun M. Murphy, John O. Pinkney and Peter Nolan for Cross-Complainant and Appellant City of Beaumont.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall and Laurence J. Phillips for Cross-Defendants and Respondents.

_____

## INTRODUCTION

This appeal involves two consolidated actions. In the first, the City of Beaumont (City) filed a third amended cross-complaint alleging Kieran McKiernan and Torcal, LLC (Torcal), fraudulently caused hundreds of false invoices to be submitted to the City for payment from 2012 to early 2016. In the second, Western Riverside Council of Governments (WRCOG), as the assignee of the City, filed a third amended complaint alleging the same. The trial court sustained demurrers to the third amended cross-complaint and the third amended complaint, ruling the claims were barred by the statute of limitations.

We conclude the pleadings adequately allege McKiernan and Torcal were properly substituted in for fictitiously named Roes and Does. Accepting the allegations as true, as we must on demurrer, the claims (with one exception) relate back to the filing of the original cross-complaint and complaint in June 2017.

2

Except for the claims for conflict of interest, we cannot conclusively determine from the face of the pleadings that the claims are barred by the statute of limitations. We reverse the judgment of dismissal and remand with directions to vacate the order sustaining McKiernan and Torcal's demurrers without leave to amend and to consider the other grounds for the demurrers that McKiernan and Torcal asserted but the trial court did not reach.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Initial Pleadings in* Urban Logic Consultants, Inc. v. City of Beaumont*, Case No. RIC1707201*

Urban Logic Consultants, Inc. (ULC) sued the City for breach of contract and other related causes of action, alleging the City failed to pay invoices totaling $880,000. ULC's complaint has been dismissed and is not at issue in this appeal.

On June 19, 2017, the City filed a cross-complaint against ULC, its former principals David Dillon, Ernest Egger, and Deepak Moorjani, and Roes 1 through 50. The City alleged it entered into consulting contracts with ULC in which ULC agreed to provide management services to the City. Pursuant to those contracts, Dillon, Egger, and Moorjani acted as the City's economic development director, director of planning, and public works director, respectively. The City alleged that, while acting in their capacity as City public officials, cross-defendants engaged in a massive scheme to defraud the City out of millions of dollars. The Roe cross-defendants allegedly participated in the fraud, including by submitting false and fraudulent invoices. The cross-complaint asserted 15 causes of action for violation of the False

3

Claims Act, fraud, breach of fiduciary duty, and other related claims. The cross-complaint also alleged that the Roe cross-defendants were alter egos of ULC and the other cross-defendants.

Dillon, Egger, and Moorjani were criminally charged with corruption and embezzlement arising out of the fraud. They pleaded guilty to the charges and, according to the City, paid $11 million in restitution. The City subsequently dismissed the cross-complaint against them.

On August 19, 2019 and September 6, 2019, the City filed amendments to its cross-complaint substituting McKiernan as Roe 1 and Torcal as Roe 2. McKiernan and Torcal acknowledged service of the summons and cross-complaint as Roes 1 and 2 on November 14, 2019.

B. *Initial Pleadings in* Western Riverside Council of Governments v. ULC*, Case No. RIC1712042*

On June 30, 2017, WRCOG filed a complaint against ULC, Dillon, Egger, Moorjani, and Does 1 through 50 in a separate action. The complaint asserted claims nearly identical to those asserted by the City in its cross-complaint in the other action. The City and WRCOG both alleged that the City had assigned its claims to WRCOG, but ULC would not acknowledge the validity of the assignment. Therefore, out of an abundance of caution, the City filed its cross-complaint. The court consolidated the actions on May 3, 2018.

On August 14, 2019 and September 16, 2019, WRCOG filed amendments substituting McKiernan as Doe 1 and Torcal as Doe 2. On November 14, 2019, counsel for McKiernan and Torcal

4

executed and returned acknowledgements of service of the summons and complaint as Doe defendants.

C. *First Round of Demurrers and Motions To Strike and First Amended Pleadings*

McKiernan and Torcal filed demurrers to the cross-complaint and complaint and motions to strike the Roe and Doe amendments.

On March 11, 2020, before the hearings on the motions, WRCOG filed a first amended complaint.  On March 24, 2020, the court granted the City's ex parte application for leave to file the first amended cross-complaint, which the City filed on June 1, 2020.

Neither WRCOG's first amended complaint nor the City's first amended cross-complaint expressly stated McKiernan and Torcal were being named in their capacity as Roe and Doe cross-defendants or defendants.  The City's first amended cross-complaint included McKiernan and Torcal by name in the caption; WRCOG's first amended complaint asserted claims against them without referring to them as Does.

The first amended pleadings alleged Torcal purchased ULC in August 2012.  McKiernan was the managing member of Torcal and became ULC's chief executive officer after the purchase.  In accordance with the allegations previously made against the Roes and Does, the first amended pleadings alleged McKiernan and Torcal submitted false and fraudulent invoices to the City, which the City paid.  The invoices included inflated charges and charges for services that were never provided to the City.  The fraudulent invoices were approved by ULC's former principals who had stayed at the City as ULC contractors after the sale was

5

completed. The fraudulent billing continued after Dillion, Egger, and Moorjani were terminated. The City and WRCOG did not discover McKiernan and Torcal had been involved in the fraud until 2019.

The first amended complaint and cross-complaint asserted the same claims against McKiernan and Torcal that had previously been asserted against Does and Roes 1 and 2: violation of the False Claims Act, conflict of interest, intentional misrepresentation based on fraudulent billing, civil conspiracy to defraud, breach of fiduciary duty, breach of the duty of loyalty, accounting, and negligence. The pleadings also asserted a claim for breach of contract against McKiernan and Torcal that had not previously been asserted against the Roes and Does.

D. *Second Round of Demurrers and Motions To Strike*

McKiernan and Torcal again filed demurrers and motions to strike. In the demurrers, McKiernan and Torcal argued the claims were not alleged with sufficient particularity and argued generally (with scant analysis) that the claims were barred by the statute of limitations because they did not relate back to the filing of the original cross-complaint and complaint. They also argued the City and WRCOG had abandoned the Roe and Doe amendments by filing amended pleadings that named McKiernan and Torcal directly.

On August 24, 2020, the court sustained the demurrers with leave to amend on the ground the claims were barred by the statute of limitations. The motions to strike were taken off calendar as moot. The court referred to Torcal and McKiernan as Doe and Roe defendants and cross-defendants. The court considered whether the Doe and Roe amendments were proper

6

under Code of Civil Procedure section 474, but the court's reasoning and conclusion are not clear. Because the court analyzed the issue in the context of the demurrers, the court did not make any factual findings.

The court then ruled the claims were barred by the statute of limitations because the City and WRCOG had not sufficiently alleged delayed discovery. The court did not explicitly consider whether any alleged claims accrued during the statute of limitations period with or without the benefit of any delayed discovery or tolling.

E. *Second Amended Pleadings and Third Round of Demurrers*

The second amended cross-complaint and second amended complaint were filed on September 14, 2020. The pleadings alleged in greater detail how the City and WRCOG first learned of McKiernan and Torcal's involvement in the fraudulent scheme in March and April 2019, and why they had not discovered the wrongdoing earlier.

McKiernan and Torcal again filed demurrers, but this time they did not file motions to strike. The court again sustained the demurrers with leave to amend on the ground the claims were barred by the statute of limitations.

F. *The Operative Pleadings: The Third Amended Cross-complaint and the Third Amended Complaint*

On January 4, 2021, the City filed a third amended cross-complaint and WRCOG filed a third amended complaint. These are the operative pleadings at issue in this appeal. The City and WRCOG allege the following facts.

7

For more than two decades, cross-defendants ULC, Dillon, Egger, and Moorjani perpetrated a fraudulent scheme in which, among other things, they submitted false invoices for unnecessary, overpriced and sometimes non-existent services. The City learned of the fraud in May 2016 when prosecutors filed felony criminal charges against Dillon, Egger, and Moorjani for corruption and embezzlement arising out of their misappropriation of City funds while acting as agents of the City.

The City's relationship with ULC started in 1993. The City had reduced the number of its full-time employees and replaced them with consultants. The City entered into consulting contracts with ULC in 1993 whereby ULC was to work with another City contractor to administer and manage a financing program for development in the City. Pursuant to the contracts, Dillon became the City's economic development director, Egger became the City's director of planning, and Moorjani became the City's public works director. Around the same time, the City hired a consultant from another firm to serve as city manager.

Working in concert with the city manager, assistant city manager, and city attorney, Dillon, Egger, and Moorjani engaged in extensive self-dealing and diverted millions of dollars of City funds to themselves and ULC. Among other things, between 1993 and 2015, ULC demanded and received payment for non-existent or unnecessary engineer reports; unnecessary engineering and design services; and fraudulently overpriced, unnecessary or nonexistent waste-water treatment services.

In August 2012, Dillon, Egger, and Moorjani sold ULC to Torcal. McKiernan was the managing member of Torcal, and after the 2012 sale, he became the chief executive officer and director of ULC. Dillon, Egger, and Moorjani continued to work

for ULC as independent contractors, and, in that capacity, continued their wrongful scheme of embezzling money from the City. Dillon, Egger, and Moorjani's embezzlement continued until mid-2015, when they stopped working for the City.

As the City later discovered, Torcal and McKiernan were involved in the wrongful conduct against the City from the time Torcal purchased ULC in 2012 to early 2016. During this time, Torcal and McKiernan submitted hundreds of invoices for payment to the City on behalf of ULC, most if not all of which demanded payment for work that was not actually performed or that was billed at grossly inflated rates. From 2012 to 2015, these invoices were purportedly reviewed and approved for payment by Dillon, Egger, and Moorjani in their capacities as City officers. In addition to approving false and fraudulent invoices for the work of other subcontractors of ULC, the former ULC principals would review and approve the invoices submitted by ULC for their own work, which was either not performed at all or overbilled. In at least one instance, on April 4, 2014, McKiernan submitted an invoice for construction work performed on his own house, which Dillon, Egger, and Moorjani approved for payment. McKiernan and Torcal continued the unlawful conduct after Dillon, Egger, and Moorjani were terminated.

The third amended cross-complaint and third amended complaint also allege ULC and Dillon, Egger, and Moorjani perpetrated a scheme to avoid paying Transportation Uniform Mitigation Fees (TUMF) to WRCOG. McKiernan and Torcal are not alleged to have participated in that scheme so those allegations are not summarized here.

The FBI and the Riverside County District Attorney's Office raided City Hall in mid-2015 and seized "all City records

9

dealing with ULC, as well as City computers." As of mid-2015, the City's management team consisted of the city manager, city attorney, city finance director, city economic development director, city director of planning, and city director of public works, all of whom were criminally charged and later pleaded guilty. McKiernan and Torcal took advantage of the lack of organization and the lack of institutional knowledge of an all-new management team and continued to submit and obtain payment based on fraudulent invoices.

The City alleges that before the district attorney's office filed the felony criminal complaints in May 2016 against ULC's original principals, the City "was unaware of the embezzlement and other wrongdoing," in part because Dillon, Egger, and Moorjani, along with their co-conspirators, "held all of the top City management positions" and "controlled all of the information presented to the City Council."

After the criminal charges were filed, the City commenced numerous investigations, including against its outside auditors, bond attorneys, and bond disclosure counsel. McKiernan and Torcal were not among the targets of these investigations because McKiernan persuasively presented himself as an innocent buyer of ULC and a victim of the former principals' wrongdoing. The district attorney's office also vouched for McKiernan, telling new City officials that McKiernan was a "good guy" who had cooperated in the criminal investigations. Further, the FBI and the district attorney's office had seized all documents related to ULC, and therefore the City did not have the necessary information to investigate individual ULC transactions.

In March and April 2019, while preparing for trial in this matter against ULC, the City learned McKiernan and Torcal had

been involved in the illegal billing scheme perpetrated by Dillon, Egger, and Moorjani and had continued the scheme until early 2016. The City conducted interviews with former ULC employees and subconsultants, who informed the City's legal counsel that McKiernan had continued the wrongful billing scheme after Dillon, Egger, and Moorjani had been terminated. The third amended cross-complaint includes detailed allegations regarding why the City did not suspect or discover the alleged wrongdoing of Torcal and McKiernan earlier.

The third amended cross-complaint and third amended complaint assert the following causes of action against McKiernan and Torcal: violation of the False Claims Act (Gov. Code, § 2650 et seq.); claim for recovery of funds based on conflicts of interest; intentional misrepresentation–fraudulent billing; civil conspiracy to defraud; breach of fiduciary duty; breach of the duty of loyalty; breach of written contract; and negligence. The City also asserts a claim for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961).

Except for the claim for recovery of funds based on conflicts of interest, each of these causes of action is based on the allegations that McKiernan and Torcal caused hundreds of false or fraudulent invoices to be presented to the City for payment between 2012 and 2016. The conflict-of-interest claim is based on an allegation that McKiernan had a conflict of interest in facilitating the execution of the contract between ULC and the City in 2013.

The operative pleadings also allege that McKiernan and Torcal are alter egos of ULC.

11

G. *The Demurrers*

McKiernan and Torcal demurred to the third amended cross-complaint and third amended complaint.  In the demurrers, they asserted that all claims were barred by the statute of limitations because the claims did not relate back to the filing of the original cross-complaint and complaint, and the allegations were insufficient to support a claim of delayed discovery.  As to the relation back, they argued the Doe and Roe amendments were defective and again vaguely suggested the Doe and Roe claims were abandoned when the City and WRCOG named McKiernan and Torcal directly in the first amended cross-complaint and first amended complaint.  They also claimed that the allegations were insufficient to support each cause of action, primarily because the allegations of fraud were not alleged with sufficient particularity.

H. *The Hearing and the Court's Ruling*

A hearing was held on March 15, 2021.  The court heard arguments and took the matters under submission.

On March 25, 2021, the court issued a written order sustaining the demurrers without leave to amend on the ground the claims were barred by the statute of limitations.  The order stated:  "[B]oth the [third amended complaint] and the [third amended cross-complaint] sufficiently plead the late discovery of facts supporting the claims alleged.  However, both pleadings fail to allege facts that establish an inability to discover those facts earlier than 2019, or reasonable diligence in investigating the potential claims.  The [d]elayed [d]iscovery [r]ule requires pleading both facts establishing the time and manner of the late

12

discovery, and the inability to discover based on reasonable diligence."

The court explained: "Significantly, the discovery rule only delays discovery until plaintiff has, or should have, inquiry notice of the cause of action. [Citation.] The following facts demonstrate at least inquiry notice to WRCOG[] and the City since they knew: (1) the Dismissed Defendants engaged in wrongful conduct as far back as 2010 when WRCOG filed its writ of mandate against the City; (2) that Torcal and McKiernan acquired Urban in 2012; (3) that Urban signed a new contract with the City in 2013; (4) that WRCOG was aware that the Dismissed Defendants committed wrongful acts after 2013; (5) that WRCOG obtained a judgment in 2014 against the City due to the conduct of the Dismissed Defendants; (6) that the FBI raided the City's offices in 2015 due to the conduct of the Dismissed Defendants; and (7) that the Dismissed Defendants were indicted in 2016."[1]

The court further found the City and WRCOG had sufficient opportunity to allege delayed discovery and had not identified any additional facts they could allege to overcome the purported defects identified by the court. Accordingly, the court denied leave to amend.

I. *The Appeal*

The City and WRCOG filed notices of appeal on May 13, 2021, purporting to appeal from the March 25, 2021 order sustaining the demurrers without leave to amend. That is not an

---

[1]     This portion of the court's reasoning was contained in the tentative ruling that was incorporated by reference in the court's final ruling.

13

appealable order.  However, on August 24, 2021, the court entered judgment of dismissal in favor of McKiernan and Torcal and against the City and WRCOG.  We treat the appeal as being from the appealable judgment.  (See *Vibert v. Berger* (1966) 64 Cal.2d 65, 68-69.)

**DISCUSSION**

A. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations contained in the operative complaint.  "We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense."  (*Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 190; accord, *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.)  "We assume the truth of properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters that are judicially noticeable."  (*Genis v. Schainbaum* (2021) 66 Cal.App.5th 1007, 1015; accord, *Ivanoff*, at p. 725.)  ""We treat the demurrer as admitting all material facts properly [pleaded], but not contentions, deductions or conclusions of fact or law.""  (*Mize v. Mentor Worldwide LLC* (2020) 51 Cal.App.5th 850, 858.)  Further, "[w]e liberally construe the pleading with a view to substantial justice between the parties."  (*Stella*, at p. 190, citing Code Civ. Proc., § 452.)  "'[A] demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense.'"  (*Stella,* at p. 191.)

14

If we conclude a demurrer was properly sustained, we review the decision to deny leave to amend under the abuse of discretion standard. (*Smith v. County of Kern* (1993) 20 Cal.App.4th 1826, 1830.) "Ordinarily it is an abuse of discretion to sustain a general demurrer to a complaint without leave to amend if there is a reasonable possibility the defect in the complaint can be cured by amendment." (*Ibid.*)

B. *It Is Not Apparent from the Face of the Complaint That the Claims Are Barred by the Statute of Limitations*

"A complaint showing on its face that the cause of action is barred by the statute of limitations is subject to general demurrer." (*Basin Construction Corp. v. Department of Water & Power* (1988) 199 Cal.App.3d 819, 823.) "'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.'" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)

Here, again, the third amended pleadings allege McKiernan and Torcal engaged in wrongdoing from 2012 to early 2016. The original cross-complaint and complaint were filed in June 2017. The Roe and Doe amendments were filed in August and September 2019. The first amended cross-complaint and complaint were filed in June 2020 and March 2020, respectively; the second amended cross-complaint and complaint in September 2020; and the third amended cross-complaint and complaint in January 2021.

15

The statutes of limitations are as follows: for the False Claims Act, six years for violations occurring after January 1, 2013 (Gov. Code, § 12654); for fraud, conspiracy to commit fraud, breach of fiduciary duty, and breach of the duty of loyalty, three years (Code Civ. Proc., § 338, subd. (d)); for breach of written contract, four years (*id*., § 337); for negligence based on an alleged breach of a professional duty, two years (*id*., § 339, subd. 1); for conflicts of interest under Government Code section 1090 et seq., four years (Gov. Code, § 1092, subd. (b)); and for civil claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961 et seq.), four years (*Agency Holding Corp. v. Malley-Duff & Associates, Inc.* (1987) 483 U.S. 143, 156).

The six-year statute of limitations for violations of the False Claims Act runs from the date of violation. (Gov. Code, § 12654.) For all other claims, the delayed discovery rule postpones accrual under some circumstances.[2]

"Under the statute of limitations, a plaintiff must bring a cause of action within the limitations period applicable thereto after accrual of the cause of action." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397). The timeliness of a claim is thus

---

[2]     See, e.g., Code of Civil Procedure section 338, subdivision (d) (delayed discovery rule applies to fraud-based claims); Goverment Code section 1092, subdivision (b) (incorporating delayed discovery principles for conflict-of-interest claims); *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 830 (delayed discovery rule applies to contract claims involving fraud); *Samuels v. Mix* (1999) 22 Cal.4th 1, 9 (delayed discovery rule applies to professional negligence claims under some circumstances); *Pincay v. Andrews* (9th Cir. 2001) 238 F.3d 1106, 1109 (RICO).

16

generally determined by counting forward from the date of accrual.  In order to conclude from the face of the pleading that a claim is barred by the statute of limitations, however, we would have to conclude, as a matter of law, that no portion of the claim accrued within the statute of limitations period, as measured *backward* from the relevant filing date.  (See, e.g., *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1472 [stating plaintiff must plead that he did not discover and could not have discovered the fraud at issue within three years prior to filing the complaint].)

We first consider what the relevant filing date is for statute of limitations purposes, that is, whether the claims in the third amended pleadings relate back to an earlier filing date.  We then analyze each claim in turn to determine whether it is clear from the face of the complaint that no portion of the claim accrued during the statute of limitations period, as measured backward from the filing date.

1.    *As alleged, the claims relate back to the original pleadings*

The parties disagree as to the operative filing date for purposes of the statute of limitations analysis.  The City and WRCOG contend the claims relate back to the filing of the original cross-complaint and complaint in June 2017; McKiernan and Torcal contend the operative date is the filing of the first amended pleadings in March and June 2020, or the third-amended pleadings in January 2021.[3]

---

[3]    McKiernan and Torcal's position on this issue has not been consistent.

17

As with any demurrer, we accept as true the factual allegations in determining whether the claims relate back to the filing of the City's original cross-complaint and WRCOG's original complaint.

Code of Civil Procedure section 474 provides: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly." "If the statute's requirements are satisfied, the amendment relates back[,] and the substituted defendant is considered to have been a party from the action's start." (*Hahn v. New York Air Brake LLC* (2022) 77 Cal.App.5th 895, 898.)

For claims in an amended complaint to relate back to the filing of the original complaint under Code of Civil Procedure section 474, the original complaint must name a Doe defendant in the caption; allege the plaintiff is ignorant of the true name and capacity of the Doe; and state a cause of action against the Doe.[4] (*Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1143.) Each of these elements is met here.

Further, the amended complaint must "(1) rest on the *same general set of facts*, (2) involve the *same injury*, and (3) refer to the *same instrumentality*, as the original one." (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 409; accord, *Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 276.)

---

[4] The same rules apply to cross-complaints and fictitiously named Roe cross-defendants.

18

Here, the City and WRCOG sufficiently allege they were genuinely ignorant of McKiernan's and Torcal's identities at the time the original cross-complaint and complaint were filed. Whether a plaintiff was genuinely ignorant of the name and capacity of the Doe defendant is a question of fact that can be determined on demurrer only if it is apparent from the face of the complaint that the plaintiff actually knew of the facts giving rise to a cause of action against the defendant at the time the original complaint was filed. "The phrase 'ignorant of the name of a defendant' [in Code of Civil Procedure section 474] is broadly interpreted to mean not only ignorant of the defendant's identity, but also *ignorant of the facts giving rise to a cause of action against that defendant.* [E]ven though the plaintiff knows of the existence of the defendant sued by a fictitious name, and even though the plaintiff knows the defendant's actual identity (that is, his name) the plaintiff is 'ignorant' within the meaning of the statute if *plaintiff lacks knowledge of that person's connection with the case* or with [plaintiff's] injuries." (*Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1170 (*Fuller*), italics added.)

It does not matter for purposes of Code of Civil Procedure section 474 whether the plaintiff *could have discovered* the identity of the defendant and the role he or she played through the exercise of due diligence. "'The fact that the plaintiff had the means to obtain knowledge is irrelevant.'" (*Fuller, supra,* 84 Cal.App.4th at p. 1170.) A plaintiff is entitled to the benefit of section 474 even when the plaintiff's ignorance arises from the plaintiff's own negligence. (*Ibid.*)

Here, the City and WRCOG allege in the original complaint and cross-complaint that they were unaware of the true names and capacities of the cross-defendants sued under the fictitious

19

names.  In the Roe and Doe amendments substituting McKiernan and Torcal, the City and WRCOG alleged that they were ignorant of the true names at the time of filing the original pleading and that they subsequently discovered the true name.  In the third amended cross-complaint and third amended complaint, the City and WRCOG alleged they did not learn McKiernan and Torcal were involved in the billing fraud until 2019.

At the demurrer stage, we accept the allegations in the pleadings as true.  We cannot determine from the face of the pleadings that the City and WRCOG actually knew of McKiernan and Torcal's involvement in the billing fraud at the time the original pleadings were filed.  Further, with the exception of the conflict-of-interest claim, all the claims alleged in the third amended cross-complaint and complaint arise out of the alleged billing fraud.

Moreover, the allegations against McKiernan and Torcal in the third amended pleadings arise out of the same general set of facts as were alleged against the Roes and Does in the original cross-complaint and complaint.  The allegations in the new pleadings involve the same injuries and instrumentalities as were alleged in the original pleadings, that is, damage from the payment of invoices for fraudulently inflated charges or for services that were never provided at all.  In the original pleadings, the City and WRCOG allege the cross-defendants, including the Roes and Does, submitted false and fraudulent invoices through mid-2015.  For example, the City's original cross-complaint alleged that cross-defendants and defendants "facilitated the payment of City funds to ULC for grossly inflated and fraudulent charges" and "caused ULC to seek and receive payments for services which were not only unnecessary, but

20

which the City believes were never actually rendered despite the fact that ULC was paid for such services." The City also alleged the cross-defendants "intentionally and knowingly submitted false work reports and requests for payment to the City for work with cross-defendants knew to be false and in excess of the actual work performed." Further, cross-defendants submitted "false invoices and work reports to the City for non-existent services, and . . . grossly overcharge[ed] the City for those professional services that were actually rendered by cross-defendants." The same allegations are made against McKiernan and Torcal in the third amended pleadings.

The third amended complaint and cross-complaint also allege McKiernan and Torcal continued to submit fraudulent bills after Dillon, Egger, and Moorjani were terminated in 2015 until early 2016. These allegations fall within the scope of the general allegations in the original pleadings. We cannot conclude, from the face of the pleadings, that claims arising from allegedly fraudulent acts from mid-2015 to 2016 do not also relate back to the original cross-complaint and complaint.[5]

The third amended complaint and cross-complaint also allege McKiernan and Torcal are alter egos of ULC, and further allege the City and WRCOG learned of this only after they

---

[5] To the extent any portion of the claims against McKiernan and Torcal do not relate back, the relevant filing date for statute of limitations purposes would be the date the Doe and Roe amendments were filed. (*Davis v. Marin* (2000) 80 Cal.App.4th 380, 901 [treating the filing of a defective Doe amendment as the filing of an amended complaint, thereby suggesting the date of filing the Doe amendment is the operative date from which the statute of limitations is calculated].) The Doe and Roe amendments were filed in August and September 2019.

21

reviewed ULC's financial disclosures in bankruptcy court. ULC filed for bankruptcy in April 2019, and ULC filed its schedule of assets and liabilities on May 6, 2019. The City and WRCOG sufficiently allege they did not know McKiernan and Torcal were alter egos of ULC at the time the original cross-complaint and complaint were filed. The alter ego allegations also arise out of the same facts as were alleged in the original pleadings; those pleadings alleged the Roes and Does were alter egos of ULC. Claims based on alter ego therefore also relate back.

The one exception to the conclusion that the claims (as alleged) relate back to the original filing date is the claim based on a conflict of interest under Government Code section 1090. The City and WRCOG allege McKiernan and Torcal violated section 1090 because they were "responsible for designing and developing the 2013 Contract" between ULC and the City and for promoting the contract's approval and execution by the City. The City and WRCOG contend this was unlawful because McKiernan and Torcal were financial beneficiaries under the contract. Although it is not entirely clear what the City and WRCOG mean by the term "financial beneficiary" in this context, it is plain from the face of the original cross-complaint and complaint that the City and WRCOG knew of McKiernan's involvement in that contract because he signed it on behalf of ULC. The City and WRCOG have provided no explanation for why this claim would relate back; they have not, for example, specifically alleged they learned of McKiernan's and Torcal's financial interest in the contract after the original cross-complaint was filed. This claim was alleged against ULC in the original pleadings; it is apparent from the face of the contract that the City and WRCOG knew of

McKiernan's role as a signatory to the contract at the time the original pleadings were filed.

For purposes of the conflict-of-interest claim, we therefore conclude the relevant date for determining the timeliness of the claim is the date the Doe and Roe amendments were filed in August and September 2019. (See fn. 5.)

Except as to the conflict-of-interest claim, McKiernan and Torcal's arguments for why the claims do not relate back are not persuasive. They incorrectly assert "[t]he general ignorance of identity requirement for a complaint to relate back is reviewed for substantial evidence." The substantial evidence standard applies to the review of factual findings; it does not apply here. All the trial court's rulings at issue in this appeal were on demurrers. The court could not make, and did not purport to make, any factual findings as to what the City or WRCOG actually knew about McKiernan and Torcal's alleged involvement in the fraud at the time their original cross-complaint and complaint were filed. The court was required to accept the allegations of the third amended complaint and cross-complaint as true.

McKiernan and Torcal also contend the City and WRCOG forfeited the ability to rely on the Roe and Doe amendments because after the Roe and Doe amendments were filed and served, the City and WRCOG filed first amended pleadings that did not specifically state that McKiernan and Torcal continued to be sued in their capacity as Roes and Does. McKiernan and Torcal repeatedly argued in the trial court that the Roe and Doe amendments had been abandoned, but the trial court implicitly rejected the argument by continuing to refer to them as Roes and Does 1 and 2 in its written orders.

We find no error in the trial court's implicit conclusion that the Roe and Doe amendments had not been abandoned. The lack of clarity in the first amended cross-complaint and complaint is at worst a minor procedural defect that does not affect the substantial rights of the parties. (See Code Civ. Proc., § 475 ["[t]he court must, in every stage of an action, disregard any . . . defect[] in the pleadings . . . which . . . does not affect the substantial rights of the parties"]; see also *Woo v. Superior Court* (1999) 75 Cal.App.4th 169, 176-177 [allowing defect to be corrected even when party wholly failed to comply with procedures for substituting in a Doe defendant].) McKiernan and Torcal were served with the summonses and cross-complaint and complaint in their capacity as Roe and Doe cross-defendants and defendants, and the City and WRCOG continued to argue the claims against them related back to the filing of the original pleadings. The trial court acted well within its discretion in ignoring any minor procedural defect in the way the parties were named in the amended pleadings and by continuing to treat McKiernan and Torcal as Doe and Roe defendants and cross-defendants. (See *Streicher v. Tommy's Electric Co.* (1985) 164 Cal.App.3d 876, 885 [trial court abused its discretion by not allowing plaintiff leave to cure defects in manner in which Doe defendants were identified in amended complaint].)

Further, to the extent McKiernan and Torcal contend the claims do not relate back because the City failed to exercise sufficient diligence to discover their role in the alleged scheme by the time the original pleadings were filed, the argument fails. "If the actual knowledge test . . . is satisfied, it is *irrelevant* that plaintiff was *negligent or failed to exercise reasonable diligence* in not having discovered defendant's identity or liability earlier:

24

'[A] plaintiff will not be refused the right to use a Doe pleading even where the plaintiff's lack of actual knowledge is *attributable to plaintiff's own negligence*.'" (*Grinnell Fire Protection Systems Co. v. American Sav. & Loan Assn.* (1986) 183 Cal.App.3d 352, 359.)

In sum, because the allegations are sufficient to support relation back under Code of Civil Procedure section 474, the relevant filing date for purposes of the statute of limitations analysis is June 19, 2017 for the City's cross-complaint and June 30, 2017 for WRCOG's complaint (except as to the conflict-of-interest claim).

>    2.    *As alleged, the False Claims Act claim is not time barred*

Under Government Code section 12651, subdivision (a), any person who, among other things, "[k]nowingly presents or causes to be presented a false or fraudulent claim for payment or approval" to an officer, employee, or agent of a political subdivision of the state or who conspires to commit such an act is liable for treble damages. Civil penalties may also be assessed. A civil action may be brought by the political subdivision under section 12652, subdivision (b)(1).

The statute of limitations is set forth in Government Code section 12654. Since January 1, 2013, section 12654 has provided: "A civil action under Section 12652 shall not be filed more than *six years after the date on which the violation of Section 12651 is committed*, or more than three years after the date when facts material to the right of action are known or reasonably should have been known by the Attorney General or prosecuting authority with jurisdiction to act under this article,

25

but in no event more than 10 years after the date on which the violation is committed, whichever of the aforementioned occurs last."[6]  (Italics added.)  The submission of each false claim gives rise to a separate violation (see Gov. Code, § 12651, subd. (a)), and it thus follows that a new claim accrues for statute of limitations purposes when a new false claim is submitted.

The parties agree the six-year statute of limitations applies here.  However, the six-year statute of limitations applies only to false claims submitted on or after January 1, 2013.  Claims based on invoices submitted on or after that date are timely because the original cross-complaint and complaint were filed in June 2017, which is less than six years after January 1, 2013.  The third amended cross-complaint and the third amended complaint allege McKiernan and Torcal submitted hundreds of invoices from 2012 through 2016, "most if not all" of which "contained excessive mark-ups[] and . . . requests for payments for work that was not actually performed for the City."  Accepting the allegations as true (as we must on demurrer), the City and WRCOG's claims based on alleged false and fraudulent invoices submitted between 2013 and 2016 are not barred by the statute

---

[6]     Before January 1, 2013, the statute provided that a civil action may not be filed "more than three years after the date of discovery by the Attorney General or prosecuting authority with jurisdiction to act under this article or, in any event, not more than 10 years after the date on which the violation of Section 12651 was committed." (Gov. Code, § 12654, Stats. 2012, ch. 647, § 6.)  The parties do not discuss this version of the statute.  We do not need to consider how this statute would apply to claims based on false invoices submitted before January 1, 2013 because the operative pleadings allege at least some of the invoices at issue were submitted after January 1, 2013.

of limitations.[7]  Accordingly, the court erred in sustaining the demurrer to this cause of action.

McKiernan and Torcal also demurred to this claim on the ground that it was not pleaded with sufficient particularity.  "As in any action sounding in fraud, the allegations of a federal False Claims Act complaint must be pleaded with particularity.  The complaint must plead the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 803, quotation marks omitted; *State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co.* (2023) 90 Cal.App.5th 1119 [discussing the particularity requirement in a False Claims Act case].)  The trial court did not reach this ground, and we therefore remand to the trial court for consideration of this issue in the first instance.

3. *As alleged, the claim for intentional misrepresentation is not time barred*

The statute of limitations for a claim of fraud is three years from accrual.  (Code Civ. Proc., § 338, subd. (d).)  A cause of action for fraud "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  (*Id.* § 338, subd. (d).)  Courts have interpreted this provision to mean that the cause of action accrues when the plaintiff discovers, or has reason to discover, the cause of action.  (*Vera v. REL-BC, LLC* (2021) 66 Cal.App.5th 57, 69.)

Thus, if any portion of the fraud claim accrued on or after June 2014, the claim would be timely for statute of limitations

---

[7]  We express no opinion as to the application of the statute of limitations for false claims submitted before 2013.

27

purposes. Three years after June 2014 is June 2017, the date of filing of the original cross-complaint and complaint.[8] As discussed, the City and WRCOG allege McKiernan and Torcal submitted hundreds of fraudulent invoices from 2012 to 2016. For invoices submitted after June 2014, the claim is timely if the submission of a new invoice gives rise to a separate cause of action for fraud for statute of limitations purposes (such as under the continuous accrual doctrine). For invoices submitted before June 2014 (or for invoices both before and after June 2014 if a new cause of action does not accrue on the submission of each invoice), the claim is timely if the City did not have reason to discover the cause of action before June 2014.

We cannot tell, as a matter of law, from the face of the complaint, that no portion of the fraud claim accrued after June 2014. The third amended cross-complaint and complaint at least generally allege that some of the fraudulent invoices were submitted after June 2014, within the statute of limitations period. The City and WRCOG may be able to prove the submission of at least some of the post-June 2014 invoices constituted a separate, independent act of fraud for statute of limitations purposes.

For example, the City and WRCOG may be able to prove the continuous accrual doctrine applies. Under that doctrine, when a plaintiff alleges he or she was harmed by a series of continual or recurring transactions, such as by the submission of a series of invoices over time, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185,

---

[8]    In arriving at the June 2014 date, we count backward from the date of filing, which is June 2017.

28

1199 (*Aryeh*) [new claim accrues upon submission of each actionable invoice]; *Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1341 [continuous accrual doctrine applied to obligation to pay royalties; each breach of the obligation to pay royalties is separately actionable].) The effect of the doctrine is that "a suit for relief may be partially time-barred as to older events but timely as to those [acts of wrongdoing occurring] within the applicable limitations period." (*Aryeh*, at p. 1192.)[9]

"[T]he doctrine represents an equitable 'response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct; [absent the doctrine,] parties engaged in long-standing misfeasance would thereby obtain immunity in

---

[9] In the briefing in the trial court, the City and WRCOG assumed without analysis that if the claims related back to the filing of the original cross-complaint and complaint, the claims would be timely. Accordingly, they did not address the application of the continuous accrual doctrine (but did address it on appeal). Similarly, in the trial court briefing, McKiernan and Torcal did not address whether the statute of limitations would bar the entire claim when some, but not all, of the alleged acts occurred within the statute of limitations period.

McKiernan and Torcal do not argue that the City and WRCOG forfeited the continuous accrual argument by failing to raise it below. Because this appeal presents a purely legal question, we consider the argument here. (See *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 394 [court exercised its discretion to consider the continuous accrual argument raised for the first time on appeal because the argument presented a purely legal question].)

perpetuity from suit even for recent and ongoing misfeasance. In addition, where misfeasance is ongoing, a defendant's claim to repose, the principal justification underlying the limitations defense, is vitiated.'" (*Gilkyson v. Disney Enterprises, Inc.*, *supra*, 244 Cal.App.4th at pp. 1341-1342.) We cannot tell from the face of the third amended pleadings that the doctrine would not apply here, and we therefore cannot conclude at this stage of the litigation that the fraud claim is barred by the statute of limitations.[10]

Further, the City and WRCOG have adequately alleged that the City could not have discovered the fraud until sometime after June 2014, and that the claim therefore did not accrue before that date. Again, a cause of action for fraud accrues when the plaintiff discovers, or has reason to discover, the cause of action. (*Vera v. REL-BC, LLC*, *supra*, 66 Cal.App.5th at p. 69.) "A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements. [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*), quotation marks omitted.) Under this test, "we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Ibid.*)

---

[10] The *Aryeh* court suggested the continuous accrual doctrine would not apply to a fraud claim when the complaint "alleged a single fraud committed at contract formation." (See *Aryeh, supra,* 55 Cal.4th at p. 1201.) We cannot tell at this stage in the proceedings from the face of the complaint whether the fraud claim here would fall into that category.

30

"[I]n order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light. In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Fox, supra,* 35 Cal.4th at pp. 808-809.)

If an action is brought more than three years after commission of the fraud, the plaintiff has the burden of pleading and proving that he or she did not make and could not reasonably have made the discovery until within three years prior to the filing of his or her complaint. (*Cansino v. Bank of America, supra,* 224 Cal.App.4th at p. 1472; see also *Fox, supra,* 35 Cal.4th at p. 809.) Specifically, the plaintiff "'must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" (*Fox*, at p. 808.)

The issue of "[w]hen a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the evidence (or, in this case, the allegations in the complaint and facts properly subject to judicial notice) can support only one reasonable conclusion." (*Stella v. Asset Management Consultants, Inc.,*

31

*supra,* 8 Cal.App.5th at p. 193; accord, *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112.)

Here, the City and WRCOG adequately allege the City, in the exercise of reasonable diligence, could not have discovered the fraud before June 2014. Until mid-2015, the City's top managers—including the city manager, assistant city manager, finance director, city attorney, city economic development director, city director of planning, and city director of public works—were part of the conspiracy to defraud the City. As of June 2014, they were all still in those roles at the City; they later pleaded guilty to criminal charges arising from their role in the fraud. These managers concealed their wrongdoing from the City Council, which did not suspect any potential misconduct until April 2015, when the FBI and the Riverside County District Attorney's Office executed search warrants on the City.

These allegations are sufficient to withstand a demurrer on the delayed discovery issue. Each of the members of the management team listed above owed fiduciary duties to the City. (See, e.g., *County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 543 [chief administrative officer of a county owes fiduciary duties to the county].) "'Where a fiduciary obligation is present, the courts have recognized a postponement of the accrual of the cause of action until the beneficiary has knowledge or notice of the act constituting a breach of fidelity. [Citations.] The existence of a trust relationship limits the duty of inquiry. "Thus, when a potential plaintiff is in a fiduciary relationship with another individual, that plaintiff's burden of discovery is reduced and he is entitled to rely on the statements and advice provided by the fiduciary."'" (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 157.)

32

What the City Council should have been able to discover under those circumstances is a highly factual issue that cannot be determined from the face of the pleadings. In addition, given the facts alleged here, there may be complicated factual issues involving whose knowledge should be considered in determining whether the City, as an entity, had inquiry notice. We cannot conclude as a matter of law that the City should have discovered the fraud by June 2014.

We specifically cannot conclude, as a matter of law, that the City was on inquiry notice of the billing fraud from the fact WRCOG had previously sued the City for wrongdoing arising out of the payment of TUMF fees. The City alleges its city attorney was in on the fraud and lied to the City Council about the litigation. Further, we cannot conclude from the face of the complaint that the issues regarding the TUMF fees were sufficiently related to the billing fraud issues such that inquiry notice as to fraud in connection with the TUMF fees would be sufficient to constitute inquiry notice regarding the billing fraud.

The trial court did not analyze whether the allegations were sufficient to support a delayed accrual date of June 2014. Rather, the court considered whether the City and WRCOG had sufficiently alleged they could not have discovered the fraud as of the date of the filing of the Roe and Doe amendments in 2019. That is not the correct inquiry for at least three reasons. First, as discussed, the City and WRCOG have sufficiently alleged the claims relate back to the filing of the original complaint and cross-complaint in June 2017. Second, a plaintiff has three years from the date the claims should have been discovered to file suit; thus, whether the City and WRCOG could have discovered the

33

fraud has to be considered in light of the City's knowledge three years before the filing date, not as of the date of filing.

Third, the court improperly considered whether WRCOG was on inquiry notice. The only relevant question is whether the City (and not WRCOG) had such notice. WRCOG sues as the assignee of the City; the assignment was made in 2017. WRCOG steps into the shoes of the City as the assignee, taking the assignor's rights and remedies. (See *Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1097.) Any knowledge that WRCOG had regarding wrongdoing by City officials before the City's assignment of its claims is relevant only to the extent it sheds light on whether the City had inquiry notice.

In sum, the trial court erred in sustaining the demurrer to the fraud cause of action on statute of limitations grounds.

As with the False Claims Act claim, McKiernan and Torcal also demurred to this cause of action on the ground it was not alleged with sufficient particularity. The trial court did not reach this issue. We reverse and remand for consideration of the issue, along with any other grounds raised in the demurrers the court did not reach.

4.      *As alleged, the claims for civil conspiracy to defraud, breach of fiduciary duty, and breach of the duty of loyalty are not time barred*

The claims for civil conspiracy to defraud, breach of fiduciary duty and breach of the duty of loyalty all sound in fraud. The statute of limitations for each is therefore three years under Code of Civil Procedure section 338, subdivision (d). (See *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1479 [where gravamen of breach of

34

fiduciary duty claim is fraud, statute of limitations is three years]; *Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.* (1989) 208 Cal.App.3d 1297, 1309 [statute of limitations for conspiracy is based on the underlying cause of action].)  These claims, as alleged, are not time barred for the same reason the fraud claim is not time barred.  The City and WRCOG adequately allege facts supporting the conclusion that the City could not have reasonably discovered the claims before June 2014.

As with the other claims, McKiernan and Torcal raised certain challenges to these claims that the trial court did not reach.  We reverse and remand for consideration of the remaining issues.

5.      *As alleged, the claim for negligence is not time barred*

Although it is not entirely clear, the claim of negligence seems to be based on a theory that McKiernan and Torcal owed a professional duty of care to the City arising out of their relationship with ULC, and that they breached the duty by negligently allowing the invoices for unnecessary, overpriced or non-existent services to be submitted for payment from 2012 to 2016.[11]  A claim for professional negligence is governed by the two-year statute of limitations in Code of Civil Procedure section 339, subdivision 1.  (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 608 [applying § 339, subd. 1, to a claim of professional negligence by an accountant].)  The delayed discovery rule applies to claims of professional negligence.  (*Id.* at pp. 613-615.)

---

[11]     We express no opinion as to whether any such duty existed.

35

As discussed, the City and WRCOG have adequately alleged the claim relates back to the filing of the original cross-complaint and complaint on June 19 and June 30, 2017. Thus, the negligence claim is timely if it accrued on or after June 19 or June 30, 2015.

The pleadings allege McKiernan and Torcal's negligence continued until early 2016. As with the fraud-based causes of action, we cannot conclusively determine, as a matter of law, that claims based on negligence occurring after June 2015 would not be subject to the continuous accrual doctrine. Again, the continuous accrual doctrine would allow the City and WRCOG to pursue claims for "actionable wrongs for which the statute of limitations has not yet expired, even if earlier wrongs would be barred." (*Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 395 [applying the continuous accrual doctrine to a negligence cause of action].) "Under the doctrine of continuous accrual, if any [of the alleged] negligent acts occurred within the statute of limitations, the cause of action is not barred." (*Id.* at p. 396.) Because it cannot be determined from the face of the third amended cross-complaint and third amended complaint that the claim for negligence is completely barred by the statute of limitations, the trial court erred in sustaining the demurrer to this claim on statute of limitations grounds.

We therefore need not address whether the City and WRCOG have sufficiently alleged they could not have discovered the wrongdoing by June 2015.

We reverse and remand for consideration of the remaining challenges to this claim that the trial court did not reach.

## 6. *As alleged, the conflict-of-interest claim is time barred*

As previously discussed, the City and WRCOG allege McKiernan and Torcal violated Government Code section 1090 which provides in relevant part: "(a) [C]ity officers or employees shall not be financially interested in any contract made by them in their official capacity. . . . [¶] (b) An individual shall not aid or abet a . . . city officer or employee in violating subdivision (a)." The terms "officer" and "employee" include "outside advisors with responsibilities for public contracting similar to those belonging to formal officers" or "formal employees." (*People v. Superior Court (Sahlolbei)* (2017) 3 Cal.5th 230, 237.) Further, the words "officer" and "employee" include corporate consultants with the requisite responsibility. (*Davis v. Fresno Unified School Dist.* (2015) 237 Cal.App.4th 261, 300.) McKiernan and Torcal do not dispute the statute of limitations for a claim under section 1090 is four years.

The City alleges "the December 2013 [c]ontract between the City and cross-defendant ULC is voidable under [s]ection 1090 because cross-defendants[] McKiernan and Torcal . . . were responsible for designing and developing the 2013 [c]ontract, and for promoting its approval and execution by the City, which they did in their capacities as 'public officials' as that term is defined in Government Code section 1090. [Citation.] These cross-defendants[] . . . were also financial beneficiaries under the 2013 [c]ontract." As discussed, this claim does not relate back to the filing of the original cross-complaint and complaint because McKiernan's identity is apparent from the face of the contract and the fact he would benefit from the contract would also have been known.

37

The City has not adequately alleged why it was not aware of the alleged conflict of interest at the time the contract was executed.  Although it is not entirely clear, the City and WRCOG seem to be alleging the contract itself gave rise to the conflict of interest.  The City and WRCOG have not alleged that the City Council was not aware of the nature of the contract and ULC's role in implementing it from the day the contract was signed.

Again, the agreement was executed in December 2013.  As alleged, the claim accrued at the time the agreement was executed.  Four years after December 2013 is December 2017.  Because the claim does not relate back, the relevant date by which timeliness is measured is the date of filing the Roe and Doe amendments in August and September 2019.  As that is more than four years after the claim accrued, the trial court properly sustained the demurrer to this claim.

However, because the trial court did not expressly address the deficiencies in the allegations regarding delayed discovery specifically with respect to this claim, we conclude the City and WRCOG should be provided with an opportunity to amend (assuming the claim survives the other challenges that the trial court has not yet addressed).

7. *As alleged, the claim for breach of written contract is not time barred*

The statute of limitations for breach of a written contract is four years.  (Code Civ. Proc., § 337, subd. (a).)  The delayed discovery rule postpones accrual of a breach of contract claim under some circumstances, such as when the breach involves fraud.  (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 830.)

38

Measured backward, four years before the date of filing of the original complaint and cross-complaint is June 2013. Thus, the breach of contract claim is timely if the claim accrued on or after June 2013. The claim for breach of the December 17, 2013 contract necessarily accrued after June 2013 since the contract was not in existence in June 2013.

As with the other claims, we remand for consideration of the other bases for the demurrer not reached by the trial court.

8. *As alleged, the RICO claim is not time barred*

The City asserts a claim for violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO). (18 U.S.C. § 1961 et seq.) To state a claim for a civil RICO violation, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." (See *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 826.) "For an act or omission to qualify as racketeering activity, it must be included in the list of activities set forth in title 18, United States Code section 1961, subdivision (1)." (*Gervase v. Superior Court* (1995) 31 Cal.App.4th 1218, 1232.)

The statute of limitations for a RICO claim is four years. (See *Agency Holding Corp. v. Malley-Duff & Associates, Inc., supra*, 483 U.S. at p. 156.) The "'civil RICO limitations period begins to run when a plaintiff knows or should know the injury that underlies his cause of action.'" (*Pincay v. Andrews* (9th Cir. 2001) 238 F.3d 1106, 1109.) The claim accrues even if the plaintiff does not discover the injury is caused by a pattern of racketeering activity. (*Rotella v. Wood* (2000) 528 U.S. 549, 555.)

The "separate accrual" doctrine applies to civil RICO claims.[12]  "[I]f a new RICO predicate act gives rise to a new and independent injury, the statute of limitations clock will start over for the damages caused by the new act." (*Lehman v. Lucom* (11th Cir. 2013) 727 F.3d 1326, 1330-1331 (*Lehman*), citing *Klehr v. A.O. Smith Corp.* (1997) 521 U.S. 179, 190 (*Klehr*); see also *Love v. National Medical Enterprises* (5th Cir. 2000) 230 F.3d 765, 772-774; *Bankers Trust Co. v. Rhoades* (2d Cir. 1988) 859 F.2d 1096, 1102.)  "At the same time . . . the 'plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period.'" (*Lehman*, at p. 1331, quoting *Klehr*, at p. 190.)  To constitute a new predicate act that will restart the statute of limitations, the act "must be a *new and independent act* that is not merely a reaffirmation of a previous act" and "[i]t must *inflict new and accumulating injury* on the plaintiff." (*Pace Industries, Inc. v. Three Phoenix Co.* (9th Cir. 1987) 813 F.2d 234, 238, italics added; accord, *Grimmett v. Brown* (9th Cir. 1996) 75 F.3d 506, 513.)

The RICO claim is based at least in part on the same allegedly false and fraudulent invoices as the other fraud-based claims.  We again count backward from the date of filing because if any portion of the claim accrued four years prior to the filing date, it is not barred by the statute of limitations.  Four years prior to the filing of the City's cross-complaint is June 2013.  The third amended cross-complaint alleges at least some of the fraudulent invoices were submitted after that date.  We cannot

---

[12]     The term "separate accrual" is used in the RICO context, as opposed to the term "continuous accrual" that is used in other contexts.

conclude, as a matter of law, from the face of the third amended cross-complaint, that those acts of fraud could not constitute new and independent acts giving rise to a new injury for statute of limitations purposes. The trial court thus erred in sustaining the demurrer to this claim on statute of limitations grounds.

As with the other claims, the court did not reach other issues raised in the demurrer, such as whether the RICO claim was alleged with sufficient particularity. We reverse and remand to the trial court for consideration of those issues in the first instance.

## DISPOSITION

The judgment is reversed and the matter is remanded with directions to vacate the order sustaining McKiernan's and Torcal's demurrers without leave to amend. The trial court is directed to consider the remaining grounds for the demurrers that it did not reach. To the extent the demurrers were based on the statute of limitations, the trial court is directed to enter a new order (1) overruling the demurrers on the claims for violation of the False Claims Act, intentional misrepresentation, civil conspiracy, breach of fiduciary duty, breach of the duty of loyalty, breach of contract, negligence, and RICO; and (2) sustaining the demurrers with leave to amend on the conflict of interest claims (unless the court concludes there are other grounds on which to sustain the demurrer to the conflict of interest claims without leave to amend). The City and WRCOG are to recover their costs on appeal.

The Request for Judicial Notice filed by McKiernan and Torcal on May 2, 2023 is denied.


ESCALANTE, J.*

We concur:


SEGAL, Acting P. J.


FEUER, J.

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.